LEO FOX, ESQ. (LF-1947)
630 THIRD AVENUE, 18TH FLOOR
NEW YORK, NEW YORK 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IN RE:                                            Case No.: 16-12453 (MEW)
                                                  Chapter 11 Reorganization


      15 JOHN CORP.,
      a/k/a LES HALLES,
      a/k/a FIRST ADMIN INC.,


                Debtor.
------------------------------------------------------------X

## APPLICATION IN SUPPORT OF TEMPORARY AND
## FINAL USE OF CASH COLLATERAL

TO THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE:


      15 John Corp., a/k/a Les Halles, a/k/a First Admin Inc., the above Debtor, respectfully represents:

      1.      On August 25, 2016, the above Debtor filed a voluntary Petition pursuant to title 11, chapter 11 of the United States Code, (the "Bankruptcy Code").

      2.      No Trustee or Examiner has been appointed in this case.

      3.      The Debtor is in the business of owning and operating 15 John Street, New York, New York 10038, a well known restaurant in the New York City known as Les Halles, serving celebrities and well connected and fashion related clientele.  This application is made to preserve whatever rights exist as to two purported secured creditors, one of which who has asserted it holds a "cash collateral" interest in the Debtor's property.

## AMERICAN EXPRESS

4. Prior to the Chapter 11 case in or about September 5, 2014, the Debtor and a non-filing related entity entitle Le Boucherie Inc. (a different restaurant which closed prior to the filing by this Chapter 11 Debtor) entered into a business loan and security agreement (Exhibit A) with American Express Bank FSB ("American Express") pursuant to which the Debtor and Le Boucherie Inc. borrowed a total of $1,000,000 which was to be repaid through the mechanism of a percentage of American Express credit card payments charged by customers of 13% of the total charges made by customers on American Express cards which requires the Debtor to pay the additional sales tax and tips from the balance of 87% of the card proceeds.  American Express stated that its balance was $163,860.50.

5. The agreement provides for the grant of a security interest (Paragraph 11) to secure joint or several debt due from, among other things, any merchant processor, accounts, chattel paper, instruments, deposit accounts and other collateral.  This creditor filed UCC-1 Financing Statements on May 7, 2014 reflecting such creditor as holding a security interest (Exhibit B).

6. In July 2016, the Debtor had been involved in negotiating an arrangement with American Express which would permit the Debtor to pay a lower percentage rate of customer card receivables than had been previously in effect.

7. The Debtor ceased operations for several days starting on August 22, 2016 until after the Chapter 11 filing on August 25, 2016 resulting in there being no credit card receivables as of the Chapter 11 filing.  After repeated phone calls during the period August 26, 2016 until September 12, 2016 to discuss cash collateral with American Express, Debtor's counsel sent three (3) e-mails dated September 12, 2016, September 14, 2016 and September 20, 2016

(Exhibit B-1) in an effort to reach to American Express to discuss a potential resolution of cash collateral.

## REWARD NETWORK

8.    On or about March 10, 2016, the Debtor and Le Boucherie Inc. entered into a Reward Network receivable purchase and marketing agreement (Exhibit C) pursuant to which these entities purchased future credit card receivables in the total amount of $600,000 for the face amount of receivables in the amount of $768,000 accruing interest at 7% per annum (representing an effective interest rate of 28% in excess of the maximum statutory usury rate and in fact in excess of the state criminal usury rate).  The purchaser was to be repaid by the receipt of a percentage of the Visa and Master Card credit card receivables.  In order to disguise the interest rate, Rewards Network apparently undertook to market and arrange for the issuance of payment cards who participate in a dining rewards program and the Debtor undertook to accept programs generated by Rewards Network.  Rewards Network has asserted that UCC-1 Financing Statements were filed on March 15, 2016 by Corporation Service Company, as Representative (Exhibit D).

9.    Although the agreement provides for the sale of the credit card receivables, the agreement also provides grant of a security interest for the "purchase" (Paragraphs 18 and 19) consisting of all personal property, the general tangibles, deposits, contract rights, payment in tangibles and other collateral.   Much of this issue was discussed in a case entitled *In Re Bistro Executive Inc. v. Rewards Network Inc.*, 2006WL 6849825 (04-4640)(CD Cal. 2006).   The Debtor has been actively seeking to negotiate an arrangement with Rewards Network in order to permit the Debtor to use this alleged "cash collateral" under a percentage distribution of credit card receivables without success.

## OFFER OF ADEQUATE PROTECTION

10.    The Debtor projects that the Debtor will create cash and/or accounts receivable and will be required to expend necessary operating expenses as reflected on the attached schedule (Exhibit E).  The expenses include payroll, rent, insurance and other essential items necessary to maintain and continue the business.

11.    Unless the Debtor is permitted to use Cash Collateral, it will be without the necessary funds to satisfy these expenses necessary to continue its operations.  The Schedules attached hereto reflect that the Debtor will realize net income during this Chapter 11 period, thus enhancing these creditors position.

12.    The Debtor proposes to pay American Express 5% of the total charges made by customers on American Express cards in reduction of such creditor's debt.

13.    The Debtor proposes to pay Rewards Network 4% of the Visa and Master Card charges by customers of the Debtor in reduction of such creditor's debt.

14.    The Debtor shall grant a replacement lien in post-petition collateral to the Secured Creditors to compensate such creditor for the use of cash collateral, in the same validity, perfection and priority as existed as of the filing of this Chapter 11 case.

15.    Debtor shall continue its operations in the ordinary course and maintain and insure the collateral which itself constitutes adequate protection to the Secured Creditor.  The Debtor contemplates that this Order may be modified once it has established the amounts, the validity, perfection and priority of the claims of these creditors.

## USE OF CASH COLLATERAL IS
## IN THE BEST INTEREST OF THE ESTATE

15.    If the Debtor is not permitted to operate because it cannot use cash collateral, the Debtor must cease operations immediately.  While the value of the business is mostly the "brand

name" of the business, significant amounts of the ongoing value of the business would be immediately and irretrievably lost.  It is only through the continuation of this business that sufficient cash can be generated to pay down the substantial claims of the secured and unsecured claims.  The projections set forth above regarding expenses and income are very realistic and based upon historical results.

16.     It is clear that the Secured Creditor and the unsecured creditors could not be benefited and served by a liquidation or through the collection of receivables of a closed business.  Therefore it is in the best interest of all parties to permit the Debtor to use cash collateral and operate.

## <u>TEMPORARY INJUNCTIVE RELIEF IS REQUIRED</u>

17.     Under the Bankruptcy Rules, a final hearing cannot be held immediately. Furthermore, the Respondents to this motion should be given a reasonable opportunity to respond to this motion if they wish.  The Debtor is in need of immediate cash to fund the business; otherwise the entire bankruptcy will be mooted because there will be no business to save.  The Debtor accordingly requests the interim use of cash collateral at the rate provided in the annexed budget pending the final hearing.   In addition, there are essential payments necessary to be made for overhead and to certain suppliers for purchases, which must also be made.

## <u>NOTICE</u>

18.     This application is being brought by Order to Show Cause, in light of the fact that an immediate hearing is necessary.  It is proposed is that the Debtor serve the Secured Creditors, and the Office of the United States Trustee, and any creditors filing Notice of Appearance with

this motion, by e-mail.  Notice of this Application was e-mailed to the attorney for Rewards Network (located in Phoenix, Arizona) and to American Express (located in Phoenix, Arizona).

19.     No prior application for the relief requested herein has been made to any court.

*WHEREFORE*, it is respectfully requested that the Court enter an Order authorizing the Debtor to use cash collateral, and granting such other and further relief as is proper.

Dated: New York, New York
      September 30, 2016

                                      **15 JOHN CORP.,**
                                      *a/k/a* **LES HALLES,**
                                      *a/k/a* **FIRST ADMIN INC.**
                                      Debtor-In-Possession

By:     */s/ Leo Fox*
             LEO FOX, ESQ.  (LF-1947)
             Attorney for Debtor
             630 Third Avenue
             New York, New York 10017
             (212) 867-959