LEO FOX, ESQ. (LF-1947)
630 THIRD AVENUE, 18TH FLOOR
NEW YORK, NEW YORK 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

IN RE:                                          Chapter 11

     15 JOHN CORP.,                          Case No. 16-12453 (MEW)
     a/k/a LES HALLES,
     a/k/a FIRST ADMIN INC.,

          Debtor.
-------------------------------------------------------------X

## OPPOSITION TO CHAPTER 11 TRUSTEE MOTION AND
## PARTIAL OPPOSITION TO RULE 2004 APPLICATION

The above Debtor, by Leo Fox, its attorney, respectfully represents.

1.     On August 25, 2016, the above Debtor filed a Petition under Chapter 11 of the Bankruptcy Code.

2.     On September 7, 2016, Rewards Network Establishment Services Inc. ("Rewards Network") forwarded a request by e-mail to the Debtor by e-mail to its counsel, attached to Rewards Network's Motion to appoint a Chapter 11 Trustee – Exhibit H demanding that the Debtor enter into a Cash Collateral Agreement affirming its agreements with Rewards Network or face the appointment of a Chapter 11 Trustee.   On September 7, the same day, the Debtor responded (see Exhibit H to Chapter 11 Trustee Motion and Exhibit A herein) raising certain issues and questions concerning Rewards Network's claim, and the lack of an identifiable UCC filing.   Subsequently the Debtor requested proof of a UCC filing.

3.     During this entire time period, from September 7, 2016 up through October 5, 2016, the Debtor has responded and sought to resolve the issues with Rewards Network while trying to work out all of its other issues (see e-mail chain dated September 30, 2016 - Exhibit B).

C:\15 John Corp\Opposition\Partial Opposition To Rule 2004 Application And Opposition To Chapter 11 Trustee\10-11-16

4.      Without responding to the Debtor's questions, on September 15, 2016 Rewards Network filed a Motion seeking a Rule 2004 Examination of the Debtor with respect to such requests as underlying financial information, balance sheet, profit and loss statements, tax returns, alleged breaches by the Debtor of contracts, to third parties going back, in one case, to August of 2012.

5.      Four (4) days later, on September 19, 2016, Rewards Network made a Motion for the Appointment of Chapter 11 Trustee alleging, among other things, that the Debtor materially misrepresented their financial condition to Rewards Network "and upon information and belief allegedly diverted funds".

6.      On September 27, 2016, the Debtor made a Motion seeking interim use of cash collateral.  At hearings held on October 5, 2016, during which Rewards Network asserted inter alia it had no dollar claim but a collection of "bad acts", this Court authorized on a no prejudice basis the use of cash collateral, specifically preserving the Debtor's rights and the rights of Rewards Network with respect to their positions. (Docket No. 28).  The Court thus authorized the payment of 4% of the Master Card and Visa credit card receivables to Rewards Network as adequate protection and further in subsequent negotiations with Rewards Network the Debtor agreed to reinstating the credit card processing facility to effectuate the transaction.  The Debtor settled a proposed Order, Notice of Settlement scheduled for October 17, 2016, authorizing the use of cash collateral because Rewards Network refused to consent to the Cash Collateral Order unless the proposed Order authorized a grant of liens, "notwithstanding the provisions of Section 552 of the Bankruptcy Code".

7.      The Trustee Motion should be denied.  Rewards Network assumes that a Motion to Appoint a Chapter 11 Trustee is a collection tactic whereby Rewards Network can make

2

unsupportable (without a single shred of evidence) allegations of "bad acts" and use the threat of

the appointment of a Chapter 11 Trustee as a threat to be paid its "non-debt" which the Debtor

has already indicated may be objected to.

8.    Nor do the agreements justify any conclusion that Rewards Network has been

defrauded as Rewards Network alleges in the Motion (Page 1 and 2 – Notice of Motion).  Under

the Agreement, Rewards Network "expressly assumed the risk that it would not be paid its future

receivables" (Page 2 of the Receivables Agreement attached to the Motion).  The Debtor's

principal's closing of a different restaurant Le Boucherie Inc. cannot constitute the basis for

liability as to the Debtor, where the Agreement itself requires as a "bad act" that the business be

closed and thereafter opened as a new business (Page 2 – 2nd paragraph of the Receivables

Agreement attached to the Motion).  Similarly, the Debtor's opening of a DIP Account cannot

form the basis for the failure to maintain a bank processor facility for a specific bank account.  In

any event, the proposed Cash Collateral Order will permit Rewards Network access to the DIP

Account.

9.    The complaints by Rewards Network are narrow and relate sole and selfishly to

its own claims having no bearing on the interests of rights of creditors and the impact that a

Chapter 11 Trustee would have on a small business filing.  Rewards Network has not established

through first hand information any basis or cause to obtain the appointment of a Chapter 11

Trustee.

**Cause does not exist to appoint a Chapter 11 Trustee**

10.    As the Second Circuit has noted, the standard for appointment of a Chapter 11

Trustee is very high" (*In re Adelphia Comm'ns Corp.*, 336 B.R. 610, 656 (Bankr. S.D.N.Y.

2006), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006)) and there is a strong presumption that a debtor

should remain in possession. *In re The 1031 Tax Group LLC*, 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007); *see also In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir.1989) ("It is settled that appointment of a trustee should be the exception, rather than the rule."). In addition, the party seeking appointment of a trustee must prove the need for a trustee by "clear and convincing evidence." *In re Adelphia Commc'ns Corp.*, 336 at 656 (citing *In re Marvel Entm't Group*, 140 at 471); *In re G-I Holdings, Inc.*, 385 F.3d 313, 317-19 (3d Cir. 2004).

11.    Thus, courts have appointed trustees where (1) the debtor's principals siphoned money out of the debtor by means of a kickback scheme, see *Fukutomi v. United States Trustee (In re Bibo, Inc.)*, 76 F.3d 256 (9th Cir. 1995), (2) assets were sold just prior to the bankruptcy filing with the knowledge that the transfer would be avoided, *see In re Russell*, 60 B.R. 42 (Bankr. W.D. Ark. 1985), and (3) a complete conversion of corporate assets occurred. *See In re Colby Construction, Inc.*, 51 B.R. 113 (Bankr. S.D.N.Y. 1985).

12.    No fact here even remotely comes close to the type of fraud needed to appoint a Chapter 11 Trustee. For example, in *In re Colby Construction, Inc.*, 51 B.R. 113 (Bankr. S.D.N.Y. 1985), the debtor's president forged a debtor shareholder's name in order to procure security on a loan he was using for personal investments. The president also used debtor funds to pay for his gym and country club memberships. *Id.* Clearly, there was an intentional motive to defraud creditors. In *In re Bibo, Inc.*, 76 F.3d 256, 257 (9th Cir. 1996), where the debtor owned an apartment complex, the debtor's principal struck a deal with the property management company to receive 50% of all the company's property management fees. This deal was struck after the court had already ordered the retention of a new property management company to replace the prior company, which was owned by the same debtor principal. In that case, the court stated that it was "abundantly clear" that the creditors' interests were not being promoted

by the debtor's principal.

13.    Here, there is no fraud only allegations which are unsupported by evidence or proof of any kind. This case is in its early inception. The Court has granted cash collateral. The Debtor appears to have generated profit.

**It is not in the best interest of the creditors or the estate to appoint a Chapter 11 Trustee under Section 1112**

14.    As noted by Rewards Network, cause exists for the appointment of a Trustee for "cause" where there is substantial or continuing loss for the estate, the absence of a reasonable of likelihood of rehabilitation or the gross mismanagement of the estate. In this case, which is not yet 60 days old, it is highly unlikely that Rewards Network could make the drastic showing necessary to find cause here. Although Rewards Network argues the Debtor's continued operation of the business and purported non-consent of Rewards Network as the basis for appointment of Chapter 11 Trustee, the operation of the restaurant creates the only value in this case, as was noted by the Court at the hearing on cash collateral, that could be available for Rewards Network and creditors. An Order for Cash Collateral and for providing adequate protection to Rewards Network has already been provided. The Court should also take into account the costs and benefits of appointing a trustee in making their determination, *see Collier on Bankruptcy* 1104.02[3][d][ii], and "engage[ ] in a fact-driven analysis, principally balancing the advantages and disadvantages of taking such a step, mindful of the many cases . . . that have held that appointment of a trustee is an extraordinary remedy, and should be the exception, rather than the rule." *Adelphia Comm'ns Corp.*, 336 B.R. at 658 (citation omitted).

15.    Here, it is highly unlikely that this fairly small business could operate with a Chapter 11 Trustee incurring administrative expenses along with counsel for such Trustee. It would only benefit the creditors to allow the Debtor to remain in possession and continue

operating the business.

**This Court should limit the scope and extent of the Rule 2004 request**

16.    Rewards Network should not be permitted to take Rule 2004 examinations seeking information relating to its Chapter 11 Trustee Motion which was filed several days after the Motion Under Rule 2004. Each of the requests relate to the basis for the appointment of Chapter 11 Trustee and to seek information regarding "bad acts". This request for "discovery" is clearly in the nature of discovery governed by Bankruptcy Rule 9014 and 7026 et. seq., and not Bankruptcy Rule 2004. The discovery requested relates to a contested matter and not to the wide scope of information sought regarding the Debtor's assets and liabilities under Rule 2004. See *In re Bennett Funding Group, Inc.* 203 B.R. 24 (Bkrtcy. NDNY 1996). Accordingly, Rewards Network must proceed by discovery governed by the Rules of Bankruptcy Rule 9014.

17.    Further, Rewards Network has alleged its first contact with the Debtor to be on March 10, 2016 when it entered into the Receivables Purchase Agreement. Rewards Network alleges "bad acts" and other wrong doings by the Debtor all occurring after March 20, 2016 which would purportedly justify its requests for a Chapter 11 Trustee. Yet, the requests seek information going back to January 2015 (Request Category No. 1, 2 and 5), January 1, 2014 (Request Category No. 3), 2013 (Request Category No. 4), an unlimited period of time (Request Category No. 6), and August 25, 2012 (Request Category No. 8). None of these requests should be allowed where they are submitted for the purposes of oppressing the Debtor and imposing onerous burden on the Debtor. In particular, these requests are all limited to the narrow aim of Rewards Network seeking to recover with respect to its questionable claim and for no other reason.

## CONCLUSION

The Chapter 11 Trustee Motion should be denied.  The Rule 2004 Application should be

denied or alternatively limited in scope.

Dated: New York, New York
      October 12, 2016

                            Respectfully submitted,

                            ***15 John Corp.***
                            ***a/k/a Les Halles***
                            ***a/k/a First Admin Inc.***

                By:    /s/ *Leo Fox*
                         Leo Fox
                         Attorney for Debtor
                         630 Third Avenue – 18th Floor
                         New York, New York 10017
                         (212) 867-9595
                         (212) 949-1857
                         leofox1947@aol.com

# EXHIBIT A

# Exhibit "H"

| | |
|---|---|
| **From:** | Gabriel, Isaac M. (PHX x3622) |
| **Sent:** | Wednesday, September 7, 2016 3:44 PM |
| **To:** | 'leofox1947@aol.com' |
| **Cc:** | Terry, Bradley D. (TUC x7766) |
| **Subject:** | 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lien/Cash Collateral |
| **Attachments:** | Les Halles - NOTICE OF BREACH AGREEMENT.pdf; M#129628 Les Halles AGREEMENT.pdf; M#129628 UCC-1 FILINGS and SEARCH.pdf |

Leo -

Our law firm represents Rewards Network in the above-referenced bankruptcy case. I'm writing because there are several urgent matters requiring attention and unless these are resolved immediately, we will be filing several motions with the court.

First, in March, 2016, the Debtor entered into an agreement with Rewards Network whereby Rewards Network paid $700,000 to the Debtor and its affiliate. Rewards Network's claim is approximately $650,000 as of today's date. The obligations under the Agreement are secured by a blanket lien in all of the Debtor's assets and, Rewards Network is the owner of specific Card Receivables (defined in the agreement) generated by the Debtor's business operations. Despite this recent transaction and Rewards Network's UCC filing, Rewards Network does not appear on the creditor matrix. This appears to be a deliberate attempt to prevent Rewards Network from asserting its rights and remedies in this case as a secured creditor and owner of certain accounts receivable.

Second, the Debtor did not obtain Rewards Network's consent to use cash collateral, and has not even contacted Rewards Network regarding the use of cash collateral. This is a clear violation of the Bankruptcy Code. To be clear, Rewards Network does not consent to the use of cash collateral and will not do so until an acceptable budget is provided and a form of order granting adequate protection (including replacement liens) is provided in form and content acceptable to Rewards Network.

Third, it appears the Debtor materially misrepresented its financial condition to Rewards Network to induce Rewards Network to enter into the Agreement. Among other things, the Debtor (and its affiliate) represented that it was paying all of its debts as they came due and was not insolvent. This appears to have been false at the time the Agreement was executed, and the Debtor appears to have been in substantial arrears with numerous creditors, including its landlord. Rewards Network reserves all rights and remedies against the Debtor and its principal for fraud and misrepresentation, including all non-discharge rights under Bankruptcy Code 523(a).

The foregoing reveals that the Debtor is not trustworthy and a trustee may be warranted in this case. If the Debtor does not immediately enter into a cash collateral stipulation and grant adequate protection to Rewards Network, Rewards Network will be filing a motion with the court regarding the unauthorized use of cash and the conversion of Rewards Network's Card Receivables. Further, Rewards Network will pursue the appointment of a trustee.

Please contact me immediately to confirm your position. Thank you for your attention to this matter. All rights and remedies are expressly and fully reserved.

**Isaac Gabriel** / Partner
Isaac.Gabriel@quarles.com /
Renaissance One, Two North Central Avenue / Phoenix, AZ 85004-2391
Office 602-230-4622 / quarles.com



**Isaac Gabriel** / Partner
Isaac.Gabriel@quarles.com / LinkedIn BIO vCard
Renaissance One, Two North Central Avenue / Phoenix, AZ 85004-2391
Office 602-230-4622 / Cell 602-750-8721 / quarles.com
Assistant Vicky Shelby 602-230-5558

**CONFIDENTIALITY NOTICE:** This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.

| From: | Gabriel, Isaac M. (PHX x3622) |
|---|---|
| Sent: | Wednesday, September 7, 2016 6:59 PM |
| To: | Leofox1947@aol.com |
| Cc: | pl@firstadmininc.com; Kathy DeCicco |
| Subject: | Re: 15 John Corp dba Les Halles  - Chapter 11 Case #16-12453  - Notice of Lie... |
| Attachments: | q-b4_5a3d366e-5945-4dc0-8c05-a908d9993108.jpg; q-b4_5a3d366e-5945-4dc0-8c05-a908d9993108.jpg |

Leo--thanks for the quick response. Phoenix is still hot and only seems to get hotter! So you aren't missing out.

Re the agreement and the UCC, I attached those to my prior email. Section 18 contains the security grant. I also attached the prepetition breach notice, which sprung the lien. Further events also sprung the lien. So my client does assert a lien interest perfected by the UCC, as well as the ownership of the Card Receivables. The agreement is not a loan, as explained in the agreement itself.

Rewards Network does provide marketing so one option would be to get the debtor back on the program and make payments in ordinary course.

I'm also happy to discuss Amex. Do you know the size of their claim?

Re a call, I'm on vacation but can do a call cross around 2-3 pm EST of that works. Let me know -- thanks Leo.

---

**From:** Leofox1947@aol.com <Leofox1947@aol.com>
**Date:** September 7, 2016 at 3:16:10 PM HST
**To:** Gabriel, Isaac M. (PHX x3622) <Isaac.Gabriel@quarles.com>
**Cc:** pl@firstadmininc.com <pl@firstadmininc.com>
**Subject:** Re: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie...

Isaac

Hello it is a pleasure to meet you. I hope it is not too hot in Phoenix. I recall it being in the 100 degree range when I lived there.many years ago.
I reviewed our UCC filings and do not see a creditor named Rewards Network having filed a UCC Statement. If your client filed in a different name please advise. My admittedly cursory look at your agreement  did not reveal a security interest in any collateral. However, I would appreciate your sending me the Agreement you are referring to to ascertain this unperfected security interest. The collateral appears to include Card Receivables generated by the Debtor's business operations according to your email. I understand that you generally deduct your loan balance from  a percent of the proceeds of any credit card charges of our customers covered by Rewards Network. Since we had recently resumed our operations, I only assume that your "collateral" would have been paid to you, pre-petition under your agreement. If you contend that your collateral covers post petition generated receivables, we may have an issue. There should be no "collateral", but again I will ask my client to check .I can represent that there was no cash as of the filing and so there does not appear to be any other collateral which could constitute cash collateral.
Additionally, American Express appears to have a similar business relationship to the one  asserted by your client, with a filed UCC statement. Their rights need to be considered. We may see how to deal with your claims in the context of their claims.
I don't know about the Matrix and will instruct my office to immediately add your client's name, and your name so that you receive notices.No significant or any matters have been raised with the Court to date and so you have not been harmed by this lack of notice.
The Debtor is a corporation and is not concerned about dischargeability, but allegations of fraud are always of concern.

In this connection, I wonder if we could have a call to discuss these issues after we both look at these issues again. I am a mediation on Thursday but am available on Friday.

Thank you.

Leo

In a message dated 9/7/2016 6:44:11 P.M. Eastern Daylight Time, Isaac.Gabriel@quarles.com writes:

Leo -

Our law firm represents Rewards Network in the above-referenced bankruptcy case. I'm writing because there are several urgent matters requiring attention and unless these are resolved immediately, we will be filing several motions with the court.

First, in March, 2016, the Debtor entered into an agreement with Rewards Network whereby Rewards Network paid $700,000 to the Debtor and its affiliate. Rewards Network's claim is approximately $650,000 as of today's date. The obligations under the Agreement are secured by a blanket lien in all of the Debtor's assets and, Rewards Network is the owner of specific Card Receivables (defined in the agreement) generated by the Debtor's business operations. Despite this recent transaction and Rewards Network's UCC filing, Rewards Network does not appear on the creditor matrix. This appears to be a deliberate attempt to prevent Rewards Network from asserting its rights and remedies in this case as a secured creditor and owner of certain accounts receivable.

Second, the Debtor did not obtain Rewards Network's consent to use cash collateral, and has not even contacted Rewards Network regarding the use of cash collateral. This is a clear violation of the Bankruptcy Code. To be clear, Rewards Network does not consent to the use of cash collateral and will not do so until an acceptable budget is provided and a form of order granting adequate protection (including replacement liens) is provided in form and content acceptable to Rewards Network.

Third, it appears the Debtor materially misrepresented its financial condition to Rewards Network to induce Rewards Network to enter into the Agreement. Among other things, the Debtor (and its affiliate) represented that it was paying all of its debts as they came due and was not insolvent. This appears to have been false at the time the Agreement was executed, and the Debtor appears to have been in substantial arrears with numerous creditors, including its landlord. Rewards Network reserves all rights and remedies against the Debtor and its principal for fraud and misrepresentation, including all non-discharge rights under Bankruptcy Code 523(a).

The foregoing reveals that the Debtor is not trustworthy and a trustee may be warranted in this case. If the Debtor does not immediately enter into a cash collateral stipulation and grant adequate protection to Rewards Network, Rewards Network will be filing a motion with the court regarding the unauthorized use of cash and the conversion of Rewards Network's Card Receivables. Further, Rewards Network will pursue the appointment of a trustee.

Please contact me immediately to confirm your position. Thank you for your attention to this matter. All rights and remedies are expressly and fully reserved.

**Isaac Gabriel** / Partner
Isaac.Gabriel@quarles.com / 🔗 📇
Renaissance One, Two North Central Avenue / Phoenix, AZ 85004-2391
Office 602-230-4622 / quarles.com



**Isaac Gabriel** / Partner
Isaac.Gabriel@quarles.com / LinkedIn BIO vCard
Renaissance One, Two North Central Avenue / Phoenix, AZ 85004-2391
Office 602-230-4622 / Cell 602-750-8721 / quarles.com
Assistant Vicky Shelby 602-230-5558

**CONFIDENTIALITY NOTICE:** This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.

# EXHIBIT B

**Leo Fox**

| | |
|---|---|
| **From:** | Leo Fox [leofox1947@aol.com] |
| **Sent:** | Friday, September 30, 2016 10:26 AM |
| **To:** | 'Gabriel, Isaac M.' |
| **Cc:** | 'Leo Fox' |
| **Subject:** | RE: 15 John Corp dba Les Halles  - Chapter 11 Case #16-12453  - Notice of Lie... [QBLLP-ACTIVE.FID38802296] |

Isaac:

Although you argue that there is a different contract and business model than the Bistro model, the contract here provides for a purchase of future credit card receivables in the amount of $300,000 from the Debtor representing receivables of a face value of $394,000, where the 7% (specified percentage of credit card sales should result in your repayment within a specified period of time of one (1) year) which would result in a criminal usury transaction, based on the disclosures regarding the projected credit card sales transactions as well as the UCC-1 financing statement securing "obligations"  (See Bistro at factual and procedural background and on a review of the actual financial bargain of the parties at page 2.  In particular, the New Hampshire case provisions by a repayment of the obligations and the filing of UCC statements.

It should be noted that Transamerica was permitted to deduct tax and tips before remitting receipts which is not the situation here.  The Courts have already rules that you are judicially estopped from claiming that these kinds of transactions are not loans and the provisions in Bistro appear to be identical to the provisions here.  Although you self-serving agreement says that you bear the risk of payment, you are seeking impose those risks on the Debtor through your Motion.  We could of course take this all to the Court and have the Court decided if in fact this is the same business model as the Bistro loan.  That can be done in the format laid out in *In Re: Venture Mortgage Fund, LP*, 282 F.3rd 185 2nd Cir. where the Second Circuit simply affirmed the findings of the two lower courts expunging the claims of the lender in full and then having a subsequent dictum discussion about whether the forfeiture was of the interest or the entire debt.   Or we can settle this now.

I am prepared to go to 4% provided that this is acceptable today to you and you agree to withdraw your Trustee Motion leaving you with the rights to seek additional amounts on a going forward basis after Confirmation.  I have set aside next week, Thursday and Friday for depositions for your clients.  Please arrange to give me their names and resumes for purposes of a Rule 30(b)(6) designation.

Leo Fox

---

**From:** Gabriel, Isaac M. [mailto:Isaac.Gabriel@quarles.com]
**Sent:** Thursday, September 29, 2016 5:22 PM

1

**To:** 'Leo Fox'
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

Leo - my client is firm at 5% if you want the motion to appoint a trustee withdrawn.  Let me know - thanks.

**From:** Gabriel, Isaac M. (PHX x3622)
**Sent:** Thursday, September 29, 2016 12:48 PM
**To:** 'Leo Fox' <leofox1947@aol.com>
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

Leo - I'll follow up with my client, but I believe this is still too low.  Your veiled threat to engage in litigation does not scare my client nor enhance your position.  The Bistro case dealt with an entirely different contract and business model which is not in play in this case and hasn't been for over a decade.  You can run as many searches as you'd like.  You won't find anything since that case, and there is a reason -- it doesn't apply. I feel pretty confident that proceeding with litigation will be far more devastating for your client than mine.

I'll check with my client re the 3% offer and circle back.

**From:** Leo Fox [mailto:leofox1947@aol.com]
**Sent:** Thursday, September 29, 2016 12:41 PM
**To:** Gabriel, Isaac M. (PHX x3622) <Isaac.Gabriel@quarles.com>
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

We can do 3%, particularly in light of the fact that Amex would likely make a demand that it is entitled to a first position.  We cannot afford to pay more than the 3%.  As I indicated, that is 50% higher than the prior offer we made of 2% and the amounts will clearly go up as the restaurant increases its hours.  At this early stage in this case, where the restaurant is not operating at its gross potential, I think that it is a good number.
We have paid approximately $104,000 to Rewards in reduction of the loan. That amount could be in jeopardy. See Bistro Executive v. Rewards Network Inc 2006 WL 6849825 , 04CV 4640 2006)
I have not received dates from you on scheduling depositions on your motion. I am running out of time. I am preparing an Answer to your motion.

Please advise.

**From:** Gabriel, Isaac M. [mailto:Isaac.Gabriel@quarles.com]
**Sent:** Thursday, September 29, 2016 11:00 AM
**To:** 'Leo Fox'
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

The offer is 5%.

**From:** Leo Fox [mailto:leofox1947@aol.com]
**Sent:** Thursday, September 29, 2016 7:37 AM
**To:** Gabriel, Isaac M. (PHX x3622) <Isaac.Gabriel@quarles.com>
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

We are prepared to accept the withdrawal of the Trustee Motion and an interim payment of the 2% subject to a 30 day notice termination to consent. That way a more final determination can be made as we get to the Plan confirmation and you are not bound by the Cash Collateral Agreement of 2%.

My client denies any fraud. In any event, we are running out of time here. It will be appreciated if you could give me several days late next week and early the following week for depositions of your clients. I appreciate your cooperation.

Very truly yours,

Leo Fox

**From:** Gabriel, Isaac M. [mailto:Isaac.Gabriel@quarles.com]
**Sent:** Wednesday, September 28, 2016 6:41 PM
**To:** 'Leo Fox'
**Cc:** Valenzuela, Amelia B.
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

This offer is not acceptable to my client. You are requesting a plan vote and withdrawal of the trustee motion in connection with this agreement. Based on this agreement, at $3,000 per month, it would take over 200 months for my client to be paid, without interest. That doesn't work.

The Agreement requires 7% of all credit card receivables from **two** restaurants. The debtor committed fraud and closed one restaurant almost immediately following payment from Rewards, and likely stole those funds. My client is willing to put the debtor back on the program and reduce the percentage to 5% of all credit card receivables (which is what the agreement requires), debited automatically by ACH (also what the agreement provides). The proposed order will need to be modified to include other protections, including a replacement lien and language required by Rewards Network. Otherwise, my client will pursue all relief in the Court, including fraud claims against Mr. Lajaunie.

**From:** Leo Fox [mailto:leofox1947@aol.com]
**Sent:** Wednesday, September 28, 2016 3:14 PM
**To:** Gabriel, Isaac M. (PHX x3622) <Isaac.Gabriel@quarles.com>
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

It is about $3,000, per month with limited hours which will increase once the Debtor is open weekends and late hours. It buys you peace, acceptance of your Agreement and a clear administrative position.

Shall I file the Cash collateral motion?

Leo

**From:** Gabriel, Isaac M. [mailto:Isaac.Gabriel@quarles.com]
**Sent:** Wednesday, September 28, 2016 1:45 PM
**To:** 'Leo Fox'

**Cc:** pl@firstadmininc.com; Valenzuela, Amelia B.
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

2% seems awfully low.  I'm checking with my client and will get back to you.  What is the gross monthly revenue (i.e., what would that 2% work out to approximately per month?).

**From:** Leo Fox [mailto:leofox1947@aol.com]
**Sent:** Wednesday, September 28, 2016 10:43 AM
**To:** Gabriel, Isaac M. (PHX x3622) <Isaac.Gabriel@quarles.com>
**Cc:** pl@firstadmininc.com; 'Leo Fox' <leofox1947@aol.com>
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

Have not heard from you.  If we indicate 2% payments under the agreement we will need you to withdraw your Chapter 11 Trustee Motion and proceed to vote for any Plan that confirms that payment schedule.

Will that work for you?

Thank you.

Leo

**From:** Gabriel, Isaac M. [mailto:Isaac.Gabriel@quarles.com]
**Sent:** Wednesday, September 28, 2016 10:23 AM
**To:** Leo Fox
**Cc:** 'Leo Fox'
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

I'm just trying to clarify. Payments under the agreement?

**From:** Leo Fox <leofox1947@aol.com>
**Date:** September 28, 2016 at 7:22:04 AM MST
**To:** Gabriel, Isaac M. (PHX x3622) <Isaac.Gabriel@quarles.com>
**Cc:** 'Leo Fox' <leofox1947@aol.com>
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

We are offering to make payments as an order of protection.  If this does not work for you, please give me available dates for next week for your clients to appear in New York for a deposition and I will send you a formal Notice of Deposition.

**From:** Gabriel, Isaac M. [mailto:Isaac.Gabriel@quarles.com]
**Sent:** Tuesday, September 27, 2016 8:39 PM
**To:** 'Leo Fox'

**Cc:** Valenzuela, Amelia B.
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

Thanks. So is the debtor offering to continue to perform and make payments in the ordinary course under the agreement?

**From:** Leo Fox [mailto:leofox1947@aol.com]
**Sent:** Tuesday, September 27, 2016 3:02 PM
**To:** Gabriel, Isaac M. (PHX x3622) <Isaac.Gabriel@quarles.com>
**Cc:** 'Leo Fox' <leofox1947@aol.com>
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

This document is what we plan on filing with the Court tomorrow.

**From:** Gabriel, Isaac M. [mailto:Isaac.Gabriel@quarles.com]
**Sent:** Monday, September 26, 2016 9:54 PM
**To:** Leo Fox
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

I'm not saying they aren't entitled to first position assuming they have a prior blanket UCC and valid security grant. But Rewards is entitled to adequate protection. Amex's claim is small and for a restaurant of this size, Rewards Network remains secured and entitled to adequate protection. Not to mention the fraud perpetrated by your client.

**From:** Leo Fox <leofox1947@aol.com>
**Date:** September 26, 2016 at 3:43:53 PM MST
**To:** Gabriel, Isaac M. (PHX x3622) <Isaac.Gabriel@quarles.com>
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

Issac,

AmEx filed its UCC first. I do not see how they are not entitled to a first position. I will check with the Client to see what is available and whether he needs your client's services. I am prepared to seek an Order of cash collateral despite the fact that you do not appear to have any cash collateral to protect, leaving it to the Judge to work out.

Leo

**From:** Gabriel, Isaac M. [mailto:Isaac.Gabriel@quarles.com]
**Sent:** Monday, September 26, 2016 5:22 PM
**To:** 'Leo Fox'
**Cc:** Valenzuela, Amelia B.; Kathy DeCicco (kdecicco@rewardsnetwork.com)
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

Leo - this does not work. First, Amex is only owed approximately $175k according to the Schedule F you filed Friday. Rewards is owed $651k. Second, in order for Rewards to administer the program under the Agreement, Rewards incurs

marketing costs and "rewards" costs in terms of the reward paid to Rewards Network's members in connection with each dining transaction. So just having money sitting there to fight about later, while my client incurs costs associated with the program and receives no contemporaneous payments, doesn't work.

The Debtor can stipulate to go back on the program and perform fully under the Agreement, and receive the marketing and survey benefits from Rewards Network thereunder. The Debtor can then make the ordinary course payments to Rewards Network, which will reduce its secured claim. We can notice the motion/stipulation and if Amex has an objection, then they can file it and we can hash it out with the court. Other than that resolution, Rewards Network intends to pursue the trustee appointment and the discovery it has sought.

Please advise as to your client's position. All rights and remedies continue to be fully reserved.

**From:** Leo Fox [mailto:leofox1947@aol.com]
**Sent:** Monday, September 26, 2016 10:26 AM
**To:** Gabriel, Isaac M. (PHX x3622) <Isaac.Gabriel@quarles.com>
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

Isaac:

Spoke to the client. Would you be prepared to discuss a fixed amount going into a segregated account subject to your competing rights among you and American Express?

Leo

**From:** Leo Fox [mailto:leofox1947@aol.com]
**Sent:** Monday, September 12, 2016 7:03 PM
**To:** 'Gabriel, Isaac M.'
**Subject:** RE: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

Gabriel

Called you. I could not reach American Express to see how they feel about this. Will try to reach them tmrw. In the meantime, I have drafted a cash collateral application which reserves all rights at this point. I will forward once my client has reviewed.

Leo

**From:** Gabriel, Isaac M. [mailto:Isaac.Gabriel@quarles.com]
**Sent:** Monday, September 12, 2016 4:24 PM
**To:** 'Leofox1947@aol.com'
**Subject:** FW: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie... [QBLLP-ACTIVE.FID38802296]

Leo - I still have not heard back from you. My client has instructed me to proceed with a motion to prohibit use of cash collateral and a motion to appoint a trustee unless we reach an agreement by noon tomorrow. Please advise. Thanks.

**From:** Gabriel, Isaac M. (PHX x3622) <Isaac.Gabriel@quarles.com>
**Date:** September 9, 2016 at 7:57:50 AM HST

6

**To:** Leofox1947@aol.com <Leofox1947@aol.com>
**Cc:** Kathy DeCicco <kdecicco@rewardsnetwork.com>, pl@firstadmininc.com <pl@firstadmininc.com>
**Subject:** Re: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie...

Leo--I didn't hear back from you. Are you available in the next hour for a call?

---

**From:** Gabriel, Isaac M. (PHX x3622) <Isaac.Gabriel@quarles.com>
**Date:** September 7, 2016 at 3:58:59 PM HST
**To:** Leofox1947@aol.com <Leofox1947@aol.com>
**Cc:** Kathy DeCicco <kdecicco@rewardsnetwork.com>, pl@firstadmininc.com <pl@firstadmininc.com>
**Subject:** Re: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie...

Leo--thanks for the quick response. Phoenix is still hot and only seems to get hotter! So you aren't missing out.

Re the agreement and the UCC, I attached those to my prior email. Section 18 contains the security grant. I also attached the prepetition breach notice, which sprung the lien. Further events also sprung the lien. So my client does assert a lien interest perfected by the UCC, as well as the ownership of the Card Receivables. The agreement is not a loan, as explained in the agreement itself.

Rewards Network does provide marketing so one option would be to get the debtor back on the program and make payments in ordinary course.

I'm also happy to discuss Amex. Do you know the size of their claim?

Re a call, I'm on vacation but can do a call cross around 2-3 pm EST of that works. Let me know -- thanks Leo.

---

**From:** Leofox1947@aol.com <Leofox1947@aol.com>
**Date:** September 7, 2016 at 3:16:10 PM HST
**To:** Gabriel, Isaac M. (PHX x3622) <Isaac.Gabriel@quarles.com>
**Cc:** pl@firstadmininc.com <pl@firstadmininc.com>
**Subject:** Re: 15 John Corp dba Les Halles - Chapter 11 Case #16-12453 - Notice of Lie...

Isaac

Hello it is a pleasure to meet you. I hope it is not too hot in Phoenix. I recall it being in the 100 degree range when I lived there.many years ago.
I reviewed our UCC filings and do not see a creditor named Rewards Network having filed a UCC Statement. If your client filed in a different name please advise. My admittedly cursory look at your agreement did not reveal a security interest in any collateral. However, I would appreciate your sending me the Agreement you are referring to to ascertain this unperfected security interest. The collateral appears to include Card Receivables generated by the Debtor's business operations according to your email. I understand that you generally deduct your loan balance from a percent of the proceeds of any credit card charges of our customers covered by Rewards Network. Since we had recently resumed our operations, I only assume that your "collateral" would have been paid to you, pre-petition under your agreement. If you contend that your collateral covers post petition generated receivables, we may have an issue. There should be no "collateral", but again I will ask my client to check .I can represent that there was no cash as of the filing and so there does not appear to be any other collateral which could constitute cash collateral.
Additionally, American Express appears to have a similar business relationship to the one asserted by your client, with a filed UCC statement. Their rights need to be considered. We may see how to deal with your claims in the context of their claims.

I don't know about the Matrix and will instruct my office to immediately add your client's name, and your name so that you receive notices.No significant or any matters have been raised with the Court to date and so you have not been harmed by this lack of notice.

The Debtor is a corporation and is not concerned about dischargeability, but allegations of fraud are always of concern. In this connection, I wonder if we could have a call to discuss these issues after we both look at these issues again. I am a mediation on Thursday but am available on Friday.

Thank you.

Leo


In a message dated 9/7/2016 6:44:11 P.M. Eastern Daylight Time, Isaac.Gabriel@quarles.com writes:

Leo -

Our law firm represents Rewards Network in the above-referenced bankruptcy case. I'm writing because there are several urgent matters requiring attention and unless these are resolved immediately, we will be filing several motions with the court.

First, in March, 2016, the Debtor entered into an agreement with Rewards Network whereby Rewards Network paid $700,000 to the Debtor and its affiliate. Rewards Network's claim is approximately $650,000 as of today's date. The obligations under the Agreement are secured by a blanket lien in all of the Debtor's assets and, Rewards Network is the owner of specific Card Receivables (defined in the agreement) generated by the Debtor's business operations. Despite this recent transaction and Rewards Network's UCC filing, Rewards Network does not appear on the creditor matrix. This appears to be a deliberate attempt to prevent Rewards Network from asserting its rights and remedies in this case as a secured creditor and owner of certain accounts receivable.

Second, the Debtor did not obtain Rewards Network's consent to use cash collateral, and has not even contacted Rewards Network regarding the use of cash collateral. This is a clear violation of the Bankruptcy Code. To be clear, Rewards Network does not consent to the use of cash collateral and will not do so until an acceptable budget is provided and a form of order granting adequate protection (including replacement liens) is provided in form and content acceptable to Rewards Network.

Third, it appears the Debtor materially misrepresented its financial condition to Rewards Network to induce Rewards Network to enter into the Agreement. Among other things, the Debtor (and its affiliate) represented that it was paying all of its debts as they came due and was not insolvent. This appears to have been false at the time the Agreement was executed, and the Debtor appears to have been in substantial arrears with numerous creditors, including its landlord. Rewards Network reserves all rights and remedies against the Debtor and its principal for fraud and misrepresentation, including all non-discharge rights under Bankruptcy Code 523(a).

The foregoing reveals that the Debtor is not trustworthy and a trustee may be warranted in this case. If the Debtor does not immediately enter into a cash collateral stipulation and grant adequate protection to Rewards Network, Rewards Network will be filing a motion with the court regarding the unauthorized use of cash and the conversion of Rewards Network's Card Receivables. Further, Rewards Network will pursue the appointment of a trustee.

Please contact me immediately to confirm your position. Thank you for your attention to this matter. All rights and remedies are expressly and fully reserved.


**Isaac Gabriel** / Partner
Isaac.Gabriel@quarles.com /
Renaissance One, Two North Central Avenue / Phoenix, AZ 85004-2391
Office 602-230-4622 / quarles.com



**Isaac Gabriel** / Partner
Isaac.Gabriel@quarles.com / LinkedIn BIO vCard
Renaissance One, Two North Central Avenue / Phoenix, AZ 85004-2391
Office 602-230-4622 / Cell 602-750-8721 / quarles.com
Assistant Vicky Shelby 602-230-5558

**CONFIDENTIALITY NOTICE:** This electronic mail transmission and any attachments are confidential and may be privileged. They should be read or retained only by the intended recipient. If you have received this transmission in error, please notify the sender immediately and delete the transmission from your system.