Leo Fox, Esq.
Attorney for Debtor
630 Third Avenue,18th Floor
New York, New York 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
IN RE:                                          Case No.: 16-12453 (MEW)
                                                Chapter 11 Reorganization

15 JOHN CORP.,
a/k/a LES HALLES,
a/k/a FIRST ADMIN INC.,

                                Debtor.
-------------------------------------------------------------X

## DEBTOR'S PLAN OF REORGANIZATION

The above Debtor proposes the following Plan of Reorganization pursuant to Section 1121 of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

1.      For purposes of this Plan, the following terms shall have the respective meanings as hereinafter set forth (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires).   A term used in the Plan that is not defined in the Plan but is used in the Bankruptcy Code shall have the meaning assigned to it in the Bankruptcy Code.   Capitalized terms used in this Plan shall at all times refer to the terms as defined in this Article I.

| | |
|---|---|
| "Administrative Claim" | An Allowed Claim or requests for payment under Section 503(b) entitled to priority under Section 507(a)(2) of the Bankruptcy Code,  administrative expenses approved by the Court pursuant to Bankruptcy Code Section 503(b), and United States Trustee fees under 28 U.S.C. § 1930 (United States Trustee fees are not required to have been filed as a request for payment). |
| "Allowed" | Means: (a) with respect to an Administrative Claim of the kind described in Section 503(b), (2), (3), (4) or (5) of the Bankruptcy Code, an Administrative Claim that has been Allowed, in whole or in part, by a Final Order; (b) with respect to any other Administrative Claim, including an Administrative Claim of the kind described in Section 503(b), an Administrative Claim as to which no objection has been filed; (c) with respect to any Claim that is not an Administrative Claim, a Claim that is either (i) listed on the Schedules as not disputed, contingent, or unliquidated, or (ii) is not a Disputed Claim or (iii) has been allowed by a Final Order; or (d) with respect to any Equity Security Interest, an Equity Security Interest that is not Disputed, |
| "American Express" | American Express Bank, FSB |
| "Bankruptcy Code" | Title 11 of the United States Code, Sections 101, et seq. or as amended thereafter in effect as of the Petition Date. |
| "Bankruptcy Rules" | The Rules of Bankruptcy Procedure as applicable to cases under Title 11 of the United States Code. |
| "Business Day" | Any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006. |
| "Cash Collateral Order" | The Order of this Court dated October 18, 2016 [Dkt. No. 36], as may be amended or extended from time to time |

| | |
|---|---|
| "Chapter 11" | Chapter 11 of the Bankruptcy Code. |
| "Claim" | A Claim, as defined in Section 101(5) of the Bankruptcy Code, against the Debtor including, without limitation, claims allowable under Section 502 of the Bankruptcy Code or requests for payment of administrative expenses allowed under Section 503 of the Bankruptcy Code. |
| "Claimant" or "Creditor" | The holder of a Claim, including the holder of a claim for damages resulting from the rejection of an unexpired executory contract or lease. |
| "Condo" | The condominium owned by Lajaunie in Colorado which is to be sold in order to fund the initial payments under the Plan. |
| "Confirmation Date" | The date on which an Order confirming this Plan is entered by the Court, provided that such Order has not been stayed. |
| "Confirmation Order" | An Order of the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code. |
| "Court" | The United States Bankruptcy Court for the Southern District of New York, or such other court as may from time to time have original jurisdiction over this Chapter 11 proceeding. |
| "Deferred Class Payment" | $110,000 less the Effective Date Class Payment |
| "Deferred Ponce Payment" | $7,500 |
| "Debtor" | 15 John Corp. a/k/a Les Halles a/k/a First Admin. Inc. |
| "Disallowed Claim" | Any Claim or portion thereof that is determined in a Final Order of the Court not to be allowed pursuant to Section 502 and 503 of the Bankruptcy Code. |

3

"Disclosure Statement"                    Any disclosure statement required by Section
                                          1125 of the Bankruptcy Code, and approved
                                          by the Court with respect to this Plan.

"Disputed"                                Means, (1) with respect to any Claim other
                                          than an Administrative Claim, a Claim (i)
                                          that would be deemed filed pursuant to
                                          Section 1111(a) of the Bankruptcy Code but
                                          as to which (A) a proof of claim has been
                                          timely filed that is inconsistent in any way
                                          with the description or treatment of such
                                          Claim in the Schedules, or (B) as to which an
                                          objection has been filed, or (ii) that would not
                                          be deemed filed pursuant to Section 111(a) of
                                          the Bankruptcy Code, whether by reason of
                                          its exclusion from the Schedules or its
                                          description therein as disputed, contingent or
                                          unliquidated, but as to which a proof of claim
                                          has been filed; or (2) with respect to an
                                          Administrative Claim, an Administrative
                                          Claim as to which an objection has been
                                          filed.

"Distribution"                            A distribution of cash or cash equivalents to
                                          the holders of Allowed Claims under the
                                          Plan.

"Effective Date"                          Shall be the later of (i) the date of a closing of
                                          the sale of the Condo (ii) the recordation of a
                                          deed of trust securing the Debtor's interest in
                                          the Condo, and (iii) fourteen (14) days after
                                          the Confirmation Date.

"Effective Date Class Payment"            100% of all available cash of the Debtor on
                                          the Effective Date after payment of (i) the
                                          initial payment to the Landlord, (ii) payment
                                          of administrative fees (not to exceed $25,000
                                          for the Debtor's counsel), and (iii) United
                                          States Trustee fees.

"Estate"                                  The estate created in this case pursuant to
                                          Section 541 of the Bankruptcy Code.

"Final Distribution"                      The date on which all Distributions provided
                                          for under this Plan have been made.

4

"Final Order"

An Order of a court as to which (a) any appeal that has been taken has been determined finally or dismissed, (b) the time for appeal has expired and (i) no timely Notice of Appeal has been filed and (ii) no Order of any Court having the affect of tolling or otherwise extending the effect of the Order or the appeal period of such Order.

"Landlord"

VJHC Holding Corp.

"Lajaunie"

Philippe Lajaunie

"Lease"

The Lease between the Landlord and the Debtor dated October 7, 1999, as amended and supplemented, for the space located at 15 John Street.

"Net Cash Income"

Lajaunie's net income after he pays all income taxes and shall not include any items that may be income for tax purposes but do not constitute the receipt by Lajaunie of cash, such as forgiveness of debt or pass-through income from entities, and shall not include any income from this Debtor.   Net Cash Income shall be reduced by any loss carry forwards from prior years, such as capital losses.

"Net Income"

All income and receipts of the Debtor less all actual cash expenses, general overhead and disbursements and any income taxes (other than non-cash items such as depreciation and amortization).  Payments to creditors under this Plan are considered expenses that reduce the Debtor's Net Income.  This definition applies solely for purposes of determining payments made to creditors under the Plan and is independent of any definitions under the Internal Revenue Code

"Petition Date"

August 25, 2016.

"Plan"

Debtor's Plan of Reorganization or as modified in accordance with the Bankruptcy Code.

| | |
|---|---|
| "Rewards Network" | Rewards Network Establishment Services Inc. |
| "Secured Claim" | Any Claim that is secured by a Lien against non-bankruptcy law that was perfected as of any property of the Estate under applicable the Petition Date and is not otherwise avoidable, but only to the extent that such Claim is not greater than the value of the assets of the Debtor securing such debt. |
| "Secured Creditor" | A Creditor holding a Secured Claim. |
| "TD Bank" | TD Bank, N.A. |
| "Unsecured Claim" | Any claim other than a secured claim, an administrative claim, a priority claim, a priority tax claim or stock holder interest claim. |

**ARTICLE II**

**DESIGNATION OF CLAIMS AND INTERESTS**

2.      All claims and interests shall be divided into the following classes.

a.    **Class 1** consists of the Allowed Claim of TD Bank.

b.    **Class 2** consists of the Allowed Claim of American Express.

c.    **Class 3** consists of the Allowed Claim of Rewards Network.

d.    **Class 4** consists of the Allowed priority claims of employees for services rendered within the six (6) week period prior to the Petition Date pursuant to § 507(a)(4) of the Bankruptcy Code.

e.    **Class 5** consists of the Allowed priority claims of the Internal Revenue Service ("IRS") pursuant to § 507(a)(8) of the Bankruptcy Code.   The Debtor believes that there are no allowed priority claims of the IRS.   Any non-priority tax claim asserted by the IRS shall be a Class 10 Unsecured Claim.

6

f. **Class 6** consists of the Allowed priority claims of the New York State Department of Taxation and Finance ("NYSTF") pursuant to § 507(a)(8) of the Bankruptcy Code.  Any non-priority tax claim asserted by the NYSTF shall be a Class 10 Unsecured Claim.

g. **Class 7A and 7B**.   Class 7 consists of the Allowed priority claims of New York City Department of Finance ("NYCDOF") pursuant to § 507(a)(8) of the Bankruptcy Code.   Class 7A consists of the NYCDOF claim for general corporate income taxes for the period January 1, 2013 to December 31, 2015, and the liquor license tax, and Class 7B consists of the NYCDOF claim for commercial rent tax for the period January 1, 2015 to August 25, 2016.  Any non-priority tax claim asserted by the NYCDOF shall be a Class 10 Unsecured Claim.

h. **Class 8** consists of the Allowed claims of the Class Action Plaintiffs, including the two "opt out" class members and class members who may have filed their own claims.

i. **Class 9** consists of Allowed claims of the Ponce Creditors arising out of a judgment and Stipulation of Settlement entered into between the Debtor and the Ponce Creditors.

j. **Class 10** consists of the holders of the Allowed general unsecured claims, including deficiency claims and non-priority governmental claims.

k. **Class 11** consists of the equity interest in the Debtor, which is 100% owned by Philippe Lajaunie.

**ANY HOLDER OF A CLAIM OR INTEREST IN ANY OF THE ABOVE CLASSES WHO FAILS TO OBJECT IN WRITING TO THE CLASSIFICATION PROVIDED IN THE PLAN AT LEAST TWENTY (20) DAYS PRIOR TO CONFIRMATION SHALL BE DEEMED TO HAVE ACCEPTED SUCH CLASSIFICATION AND TO BE BOUND THEREBY.   ANY BALLOT WHICH IS EXECUTED BY A HOLDER OF AN**

**ALLOWED CLAIM WHICH DOES NOT INDICATE ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED AN ACCEPTANCE OF THE PLAN.**

**ARTICLE III**

**<u>TREATMENT OF CLASSES THAT ARE NOT IMPAIRED</u>**

3.      All Classes are impaired, except Class 1.

**ARTICLE IV**

**<u>TREATMENT OF CLASSES</u>**

**<u>Class 1</u>**

4.      The Debtor proposes to reinstate the Claim of TD Bank.    This Class is not impaired and shall not vote on the Plan.

**<u>Class 2</u>**

5.      During the pendency of this bankruptcy case, the Debtor has been making adequate protection payments to American Express such that American Express is presently owed approximately $90,000.

6.      Commencing with the Effective Date, American Express shall be paid on a monthly basis commencing with the Effective Date an amount equal to 4% of all American Express credit card receivables during the 2017 year, 5% of all American Express credit card receivables during 2018 year, and 6% of all American Express credit card receivables during the 2019 year, until the Allowed American Express Claim is paid in full.    Subject to the foregoing, such payments shall be made in accordance with the present collection practices provided for under the Cash Collateral Order.    This Class is impaired and shall vote on the Plan.

**<u>Class 3</u>**

7.      Commencing on the Effective Date, with respect to any Allowed Class 3 Claim, Rewards shall be paid on a monthly basis 4% of all MasterCard and Visa credit card receivables

during the 2017 year, 5% of all MasterCard and Visa credit card receivables during 2018 year, and

6% of all MasterCard and Visa credit card receivables during the 2019 year. Subject to the

foregoing, such payments shall be made in accordance with the present collection practices

provided for under the Cash Collateral Order, and shall be in full satisfaction of all claims held by

Rewards Network.   On the Effective Date, this creditor shall dismiss, with prejudice, the Illinois

Court Action.   This Class is impaired and shall vote on the Plan.

**Class 4**

8.     Allowed Class 4 Claims shall be paid in cash during 2018 and 2019 in consecutive

quarterly installments commencing on March 31, 2018, with each installment being in the sum of

1/8 of the total Allowed priority claim.    This Class is impaired and shall vote on the Plan.

Employees who did not file claims, or filed unsecured claims, shall be treated as unsecured

creditors in Class 10.

**Class 5**

9.     The Debtor does not believe that it owes any amounts to the Internal Revenue

Service (the "IRS"), the sole member of Class 5.    Any Allowed priority amount that is owed to the

IRS shall, pursuant to § 1129(9)(C), be paid in two installments:   (i) 50% by December 31, 2018,

and (ii) 50% by December 31, 2019.   This Class is impaired and shall vote on the Plan.

**Class 6**

10.     The Debtor shall pay any Allowed Class 6 claim during 2018 and 2019, pursuant to

§ 1129(9)(C), in quarterly payments commencing March 31, 2018, with each installment being in

the sum of 1/8 of the total Allowed Class 6 claim.   This Class is impaired and shall vote on the

Plan.

**Class 7A**

11.     The Debtor shall pay any Allowed Class 7A claim, pursuant to § 1129(9)(C), in two

installments:   (i) 50% by December 31, 2018, and (ii) 50% by December 31, 2019.   This Class is impaired and shall vote on the Plan.

**Class 7B**

12.     The Debtor shall pay any Allowed Class 7B claim during 2019, pursuant to § 1129(9)(C), in quarterly payments commencing March 31, 2019, with each installment being in the sum of 1/4 of the total Allowed Class 7B claim.

**Class 8**

13.     Claimants in Class 8 shall receive *pro rata*:

    a.   On the Effective Date, the Effective Date Class Payment;

    b.   In the year 2017, $15,000 if the Debtor realizes $120,000 in Net Income, plus 35% of all Net Income after the Debtor realizes $140,000 in Net Income;

    c.   In the year 2018, 35% of all Net Income after the Debtor realizes $37,500 in Net Income, plus 50% of the Deferred Class Payment by December 31, 2018;

    d.   In year 2019, 35% of Net Income, plus the 50% of the Deferred Class Payment by December 31, 2019;

    e.   In the years 2020 and 2021 (subject to an extension being given to the Lease), 35% of Net Income.

**Class 9**

14.     Claimants in Class 9 shall receive *pro rata*:

    a.   In the year 2017, $5,000 if the Debtor realizes $120,000 in Net Income, plus 5% of all Net Income after the Debtor realizes $140,000 in Net Income.

    b.   In the year 2018, 5% of all Net Income after the Debtor realizes $37,500 in Net Income, plus 50% of the Deferred Ponce Payment by December 31, 2018;

    c.   In year 2019, 5% of Net Income, plus 50% of the Deferred Ponce Payment by

December 31, 2019;

    d.   In the years 2020 and 2021 (subject to an extension being given to the Lease), 5% of Net Income.

## Class 10

15.    Holders of Class 10 Claims shall receive shall receive *pro rata:*

    a.   In the year 2017, 10% of all Net Income after the Debtor realizes $140,000 in Net Income;

    b.   In the year 2018, 10% of all Net Income after the Debtor realizes $37,500 in Net Income;

    c.   In year 2019, 10% of Net Income.

## Class 11

16.    Lajaunie, as the sole holder of a Class 11 Claim, shall receive no monies on account of his equity.  Lajaunie shall transfer his 100% equity interest into escrow, which shall be returned to him on the first anniversary of the Effective Date assuming all payments under the Plan have been made.

**ARTICLE V**

**LAJAUNIE AND THE DEBTOR**

17.    Post-Effective Date, Lajaunie shall continue to manage and operate the Debtor. The Debtor and Lajaunie shall enter into a three year employment contract that provides that Lajaunie shall receive:

    a.   In the year 2017, $80,000 in annual salary, plus 10% of the Net Income of the Debtor after the first $140,000 of Net Income;

    b.   In the year 2018, $90,000 in annual salary, plus 10% of the Net Income of the Debtor after the first $37,500 of Net Income; and

    c.   In year 2019, $100,000 in annual salary, plus 10% of the Net Income of the

Debtor.

18.    For years 2017, 2018, 2019, Lajaunie shall pay 10% of any Net Cash Income, in

excess of the first $200,000 of Net Cash Income received by Lajaunie from sources other than

his work for this Debtor, to holders of Claims in Class 8 (88%) and Class 9 (12%).

19.    Other than amounts provided above for Lajaunie, the Debtor shall not pay or

transfer any sums to Lajaunie or his immediate family members directly or indirectly, and shall

not pay any third parties with the understanding that such parties will subsequently transfer any

such amounts to Lajaunie or any of his immediate family.

**ARTICLE VI**

**ADMINISTRATION EXPENSES AND UNCLASSIFIED CLAIMS**

20.    Chapter 11 administration creditors, including the professionals for the Debtor

who have rendered services and who are entitled to compensation under §§ 327 and 503(b) of the

Bankruptcy Code, and the fees payable to the Office of the United States Trustee under 28

U.S.C. § 1930, are not classified.   All fees of professionals retained by the Debtor shall be

approved by the Bankruptcy Court.   To the extent that the professional fees approved by the

Bankruptcy Court for the Debtor's counsel and/or accountants exceed the estimates described in

paragraph 27 of the Disclosure Statement, the amount in excess of the estimate will not be paid

on the Effective Date but instead will be paid 50% by [_____], 2018 and 50% by November

30, 2018.

21.    All post-confirmation quarterly reports and quarterly fees required by the United

States Trustee under 28 U.S.C. § 1930 shall be filed and paid on a quarterly basis until entry of a

final decree, dismissal of the case or conversion to Chapter 7.

## ARTICLE VII

### EXECUTORY CONTRACTS

22.    The Lease will be assumed subject to the following terms: (i) payment of $70,000 to the Landlord on the Effective Date, and (ii) payment of the balance of the cure amount (approximately $110,000) to the Landlord in equal monthly installments over the remainder of the Lease term (approximately December 2019).

23.     The Debtor will reject any other executory contracts on the Effective Date, other than the Lease and any contracts with Gravity Payments, the Debtor's credit card payment processor.    For the avoidance of doubt, the Debtor's liquor license is not an executory contract and the Reorganized Debtor shall continue to operate in accordance with the liquor license. Persons holding claims as a result of the rejection of any executory agreement may file a claim with the Bankruptcy Court within 30 days of the rejection.

## ARTICLE VIII

### DISTRIBUTIONS

24.    <u>Distribution Agent</u>.    Payments due under the Plan after Confirmation and Consummation shall be made by the Debtor.

25.    <u>Manner of Payments Under the Plan</u>.    Payments to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

26.    <u>Fractional Cents</u>.    Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made.    Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down).

13

27.     <u>Unclaimed Cash</u>.   Except as otherwise provided herein, in the event any Entity fails to claim any cash within six (6) months from the date such cash is distributed, or such Entity fails to cash a check received as a distribution within six (6) months from the date of the distribution, such Entity shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such distribution was made shall be treated as a Disallowed Claim.   In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Court or if no proof of claim is filed, on the schedules filed by the Debtor, or to such other address as may be designated by a Claimant.

28.     <u>Disputed Payments or Distributions</u>.   In the event of any dispute between and among Claimants (including the Entity or Entities asserting the right to receive the disputed payment or distribution) as to the right of any Entity to receive or retain any payment or distribution to be made to such Entity under the Plan, the Debtor may, in lieu of making such payment or distribution to such Entity, make it instead or to a disbursing agent, for payment or distribution as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves.

## ARTICLE IX

## <u>PROCEDURES FOR RESOLVING DISPUTED CLAIMS</u>

29.     <u>Time Limit for Objections to Claims</u>. Objections to Claims shall be filed by the Debtor with the Court and served upon each holder of each of the Claims to which objections are made not later than sixty (60) days subsequent to the Effective Date or within such other time period as may be fixed by the Court. Unless otherwise extended by Order of the Court, the Debtor may file an objection to the allowance of any Claim filed resulting from the rejection of an executory contract on the later of thirty (30) days following the Effective Date or within thirty

14

(30) days after the filing of such Claim and service of a copy of such Claim upon the Debtor as provided for in the Plan.

30.    <u>Resolution of Disputed Claims</u>.    Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claims, in its sole discretion, without notice to any party in interest, other than notice of not less than ten (10) days' notice, as between the Debtor.

31.    <u>Payments</u>.    Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim belongs.    Such payments and distributions shall be made as soon as practicable after the date that the Court enters a Final Order allowing such Claim, but not later than thirty (30) days thereafter.    Payments shall be made as and when a Disputed Claim has become, in whole or in part, an Allowed Claim or a Disallowed Claim, pursuant to a Final Order or agreement between the Debtor and such Claimants.

## ARTICLE X

## EVENT OF DEFAULT

32.    The occurrence of any one of the following shall constitute a default by the Debtor under the Plan:

   a.    the Debtor defaults in making payments due under the Plan (and the grace period provided for herein shall have passed), and unless such default (hereinafter referred to as an "Event of Default") has been waived in accordance with the terms herein;

   b.    the Debtor breaches any of the covenants contained herein prior to payment of payments due under the Plan;

15

c. the Debtor seeks relief under any Federal or State statute (other than the Debtor's present Chapter 11 case); or

d. a receiver, liquidator, custodian, or trustee is appointed for substantially all of the property of the Debtor prior to completion of the payment of payments due.

33.     Upon the occurrence of an Event of Default, any Creditors shall notify the Debtor therefor, and the Debtor shall have ten (10) business days from the date of the sending of such notice to cure such breach.   In the event the Debtor fails to cure such breach within the prescribed period, the Debtor shall be deemed to have defaulted on the terms of the Plan, and the Creditors shall have all rights available to them under state law or the Bankruptcy Code and the Bankruptcy Rules, or under this Plan, including conversion to a Chapter 7 case.

## ARTICLE XI

## THE REORGANIZED DEBTOR

34.     Upon the Effective Date, the Debtor will become the "Reorganized Debtor" and shall have achieved a reorganization involving the various claims of all the creditors under the Plan.   The Reorganized Debtor shall continue its corporate identity and shall continue to function as a corporation with all the authority granted by its certificate of incorporation, the bylaws and appropriate law.   Lajaunie shall continue to act as President. All the present provisions in the certificate of incorporation and the by-laws, shareholders' meetings, election of directors and other corporate matters shall govern the Reorganized Debtor.   The provisions of New York Corporation Law shall govern the election and selection of any officer and director of the Debtor, and any successor thereof.   On the Effective Date, the equity shares of the Reorganized Debtor shall be delivered into escrow pursuant to the provisions of the Plan.

35.     Upon Confirmation, the Reorganized Debtor shall be vested with all property of the Debtor free and clear of claims and interests, except as set forth in the Plan, and after Confirmation the Reorganized Debtor shall continue its business and manage its affairs without further supervision of the Court subject to the retention of jurisdiction provisions set forth herein.

## ARTICLE XII

## MODIFICATION OF PLAN

36.     The Debtor may amend or modify this Plan at any time prior to Confirmation without approval of the Court; after Confirmation, the Debtor may modify the Plan before substantial consummation with approval of the Court.   The Debtor may make immaterial modifications to the Plan at any time upon notice of presentment of such modifications to all Creditors.

## ARTICLE XIII

## PROVISIONS FOR CLASSES WHICH ARE
## IMPAIRED AND DO NOT ACCEPT THE PLAN

37.     In the event that any impaired class of Claims or interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if all other requirements under 1129(a) of the Bankruptcy Code are satisfied, and if, with respect to each impaired class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly and is "fair and equitable".   Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires that at least one impaired class of claims accept the Plan.   The Debtor believes that the Plan is "fair and equitable" and that the Plan does not "discriminate unfairly".

38.     <u>Secured Claims</u>. A plan will be deemed fair and equitable with respect to a non-accepting class of secured claims if (a) the holder of each claim in such class will retain its

lien or liens and receive deferred cash payments totaling the allowed secured claim, of a value, as of the Consummation Date, equal to the value of such holder's interest in the collateral (b) the holder of each claim in such class will receive the proceeds from any sale of such collateral, or (c) the holder of each claim in such class will realize the indubitable equivalent of its allowed secured claim.

39.    <u>Unsecured Claims</u>.    A plan will be deemed fair and equitable with respect to a non-accepting class of unsecured creditors claims if (a) the holder of each claim in such class will receive or retain under the plan property of a value, as of the Consummation Date, equal to the allowed amount of its claim, or (b) holders of claims or interests that are junior to the claims of such creditors will not receive or retain any property under the plan on account of such junior claim or interest.

40.    <u>Interests</u>.    A plan will be deemed fair and equitable with respect to a non-accepting class of interests if the plan provides that (a) each member of such class receives or retains on account of its interest property value, as of the Consummation Date equal to the greatest amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (b) holders of interests that are junior to the interests of such class will not receive or retain any property under the plan on account of such junior interests.

**ARTICLE XIV**

**<u>GENERAL PROVISIONS</u>**

41.    <u>Notices</u>. All notices, requests, elections or demands in connection with the Plan, including any change of address of any Claimant or holder of a Stock Interest for the purposes of receiving distributions under the Plan and forfeiting same pursuant to this Plan hereof, shall be in writing and shall be deemed to have been given when received or, if mailed, five days after the

18

date of mailing provided such writing shall have been sent by registered or certified mail,

postage prepaid, return receipt requested, and if sent to the Debtor, addressed to:

> with a copy to:
>
> Leo Fox, Esq.
> 630 Third Avenue (18th Floor)
> New York, New York 10017

All notices and requests to Claimants and Stock Interest Holders of any Class shall be sent to

them at their last known address.    The Debtor, and any Claimant or Stock Interest Holder of any

Class, may designate in writing any other address for purposes of this Section which designation

shall be effective upon receipt.

42.    <u>Headings</u>. The headings used in the Plan are inserted for convenience only and

neither constitutes a portion of the Plan nor in any manner affect the provisions of the Plan.

43.    <u>Severability</u>.    Should any provision in the Plan be determined to be

unenforceable, such determination shall in no way limit or affect the enforceability and operative

effect of any and all other provisions of the Plan.

44.    <u>Governing Law</u>.    Except to the extent that the Bankruptcy Code is applicable,

the rights and obligations arising under the Plan shall be governed by, and construed and

enforced in accordance with, the internal laws of the State of New York.

**ARTICLE XV**

**<u>UNITED STATES TRUSTEE FEES</u>**

45.    All unpaid fees to the United States Trustee under 28 U.S.C. Section 1930

through the Effective Date shall be paid on or before the Effective Date from funds in the

Distribution Account.    Any unpaid fees due to the United States Trustee after the Effective

Date shall be paid from the operating funds of the Debtor when such fees are due and payable.

**ARTICLE XVI**

## DISCHARGE OF CLAIMS AND INTERESTS DISCHARGE

46.    Pursuant to Section 1141(d) of the Bankruptcy Code, the Confirmation Order shall discharge all claims against the Debtor.    Except as expressly provided herein, the rights afforded in the Plan and the treatment of all Creditors and Holders of Stock Interest provided herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims as of the Effective Date, of any nature whatsoever, whether known or unknown, contingent or liquidated including any interest accrued or expenses incurred thereon from and after the Debtor's Petition Date, against the Debtor, the Debtor-in-Possession or the reorganized Debtor (or any of their properties or interest in properties), Except as otherwise provided in the Plan, upon the Consummation Date, all Claims against the Debtor and will be satisfied, discharged and released in full exchange for the consideration provided for hereunder.    All persons and entities shall be precluded from asserting against the Debtor, the reorganized Debtor, its successors, or its respective assets or properties,    any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

## Injunction

47.    **Except as otherwise provided in the Plan or Confirmation Order on and after the Confirmation Date, all entities which have held, currently hold or may hold a debt, claim, other liability or interest against the Debtor that would be discharged upon Confirmation of this Plan,    pursuant to the provisions of Section 1141(d) of the Bankruptcy Code and this Section, are permanently enjoined from taking any of the following actions on account of such debt, claim, liability, interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such claim against property which is to be distributed under this Plan, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching**

collecting or recovering in any manner or judgment, award, decree, order other than as permitted under Sub-paragraph (a) above; and (c) creating, perfecting or enforcing any lien or encumbrance against any property to be distributed under this Plan.

**Exculpation**

48.    To the extent permitted by applicable law, if the respective affiliates, officers, directors, members, representatives, attorneys, accountants, financial advisors, and agents of the Debtor and their professionals act in good faith, they shall not be liable to any holder of a Claim, or any party with respect to any action, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with (a) the operation of the Debtor; (b) the proposal or implementation of any of the transactions provided for or contemplated under this Plan; or (c) the administration of this Plan or the distribution to be made pursuant to this Plan, other than for willful misconduct or gross negligence.    The Debtor and its respective affiliates, officers, directors, members, representatives, attorneys, accountants, financial advisors, and agents, may rely on the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, and such reliance shall conclusively establish good faith.    Any objection to this Section by any holder of a Claim or equity interest shall be filed by the deadline established by the Bankruptcy Court for objecting to Confirmation of this Plan or shall be waived.

**Releases by the Debtor**

49.    On the Effective Date, to the fullest extent permissible under applicable law, the Debtor and Debtor-in-Possession shall be deemed to forever release, waive and discharge all claims, demands, debts, rights, causes of action or liabilities (other than the right to enforce the obligations of any party under the Plan and the documents delivered in connection therewith) against Lajaunie, whether liquidated or unliquidated, fixed or contingent, matured or unmatured,

known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity or otherwise, that relate in any way to the Debtor or Debtor-in-Possession, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date, and that could have been asserted by or on behalf of the Debtor or its Estate, whether directly, indirectly, derivatively or in any representative or other capacity.   Nothing in this Section shall be construed as a release of any fraud, gross negligence, or willful misconduct.

**Releases by Holders of Claims and Interests**

50.    **On the Effective Date, to the fullest extent permissible under applicable law, each holder of a claim that receives a distribution under the Plan, in consideration for the Plan distributions and other obligations of the Debtor and reorganized Debtor under the Plan, will be deemed to consensually forever release, waive and discharge all claims, demands, debts, rights, causes of action or liabilities (other than the right to enforce the obligations of any party under the Plan and the documents delivered in connection therewith) against Lajaunie, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity or otherwise, that relate in any way to the Debtor or Debtor-in-Possession and that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date.**

**ARTICLE XVII**

**RETENTION OF JURISDICTION**

51.    Notwithstanding Confirmation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)    Determination of the allowability of claims upon objection to such Claims.

(b)    Determination of request for payment of Claims and fees entitled to priority under Section 507(a)(1), or of post petition fee disputes.

(c)    Resolution of any dispute concerning interpretation of the Plan.

(d)    Implementation of the provisions of the Plan.

(e)    Entry of Orders in aid of consummation of the Plan including Orders to protect the revested and Reorganized Debtor from creditor action.

(f)    Modification of the Plan pursuant to Section 1127 of the Bankruptcy Code.

(g)    Adjudication of any causes of action including voiding powers action commenced by the Debtor, including the commencement and prosecution of Certain Litigations.

(h)    Entry of a final order of Confirmation closing the case.

Dated: New York, New York
      May, 2017

                                  *15 JOHN CORP.*
                                  *a/ka/ LES HALLES*
                                  *a/k/a FIRST ADMIN. INC.*

                                By:   _____
                                      Philippe Lajaunie
                                    President

/s/ Leo Fox_____
LEO FOX, ESQ. (LF-1947)
Attorney for Debtor
630 Third Avenue
New York, New York 10017
(212) 867-9595