# LEO FOX
*ATTORNEY-AT-LAW*

630 Third Avenue, New York, New York 10017
(212) 867-9595    Fax (212) 949-1857
*E-Mail:  leo@leofoxlaw.com*

February 22, 2018

Honorable Michael E. Wiles
United States Bankruptcy Judge
United States Bankruptcy Court
One Bowling Green
New York, New York 10004-1408

Re:    15 John Corp.
        Case No. 16-12453 (MEW)

Dear Judge Wiles:

In response to Mr. Lajaunie's email of February 21, 2018 at 9:00 p.m., I assume we are now rearguing the prior reargument of Mr. Lajaunie challenging the March 19, 2018 hearing date selected by this Court.   In fact, Mr. Lajaunie previously proposed the March 28, 2018 date in his February 16, 2018 12:59 p.m. email and his February 15, 2018 at 7:42 p.m. email (Exhibit A). This March 28, 2018 date is not going to be possible for my package tour schedule, particularly where there is a trip to the airport with my family and luggage and a three to four hour prior check-in for international flights, and in particular the stringent security measures undertaken by El Al Airlines.

Mr. Lajaunie makes continual, specific and inferential comments that he cannot afford to fly and that his employment is insufficient to pay for a ticket.   Mr. Lajaunie actually owns extensive water bottling business interests and underlying land in Wyoming as referenced in *Singer v. Lajaunie*, 2014 WY 159, 339 P.3d 277 at 282 (2014) (Exhibit B) (after Mr. Lajaunie's purchase of the assets of the joint venture between Mr. Lajaunie and the Singer interests from the bank which was holding such assets as collateral, Mr. Lajaunie sued Singer and after motions for summary judgment, and a trial, and then an appeal, obtained a judgment of $1,604.63 plus $13,000 in favor of the joint venture entity but not to Mr. Lajaunie). He also owns a luxury condominium and other assets in New York.   He travels frequently outside the United States as is evident by his emails.   Any job positions that he may have in Wyoming undoubtedly relates to his interest in skiing, on information and belief, and certainly does not constitute an indication as to his income and assets.

However, in order to accommodate Mr. Lajaunie, I am prepared to chip in the approximate $250 salary per day he has claimed he would be forfeiting, to retain the March 19, 2018 hearing date, or subject to this Court's availability any of the days between March 17, 2018 through March 23, 2018 that he claims he is working.

Alternatively, the Docket Sheet in the Park County District Court involving Mr. Lajaunie's litigation indicates that the trial has been rescheduled from March 26, 2018 to July 9, 2018 and his Motion made by his counsel scheduled for March 26, 2018 can proceed without him or, if necessary, can be made with his telephonic appearance as is evidenced by that Court's prior grant of telephonic appearances (see Docket Sheet - <u>Exhibit C</u>).   In such a case, Mr. Lajaunie could travel to New York on Sunday or anytime over the weekend for the hearing on March 26, 2018 in the morning and later can appear by telephone in the Wyoming action (based upon the three (3) hour time lag, if necessary) and then proceed to Chicago for his March 28, 2018 hearing.

Based on this record, I am extremely reluctant to allow the hearing to proceed on the last day I am in New York.

Finally, I have requested in my Notice of Hearing for all objections to be filed seven days prior to the hearing and I respectfully request that Mr. Lajaunie comply with that direction or forfeit any arguments related to any failure to provide documents and objections.

Thank you.

Very truly yours,

/s/ *Leo Fox*

LF:cb
Enclosure

cc:    Richard Morrissey, Esq.
       Neil Berger, Esq.
       Philip Lajaunie

# *EXHIBIT A*

**From:** pl@firstadmininc.com [mailto:pl@firstadmininc.com]
**Sent:** Friday, February 16, 2018 12:59 PM
**To:** Leo Fox <leo@leofoxlaw.com>
**Subject:** RE: 15 John Corp case #16-12453 Leo Fox Fee Application

Mr. Fox,
Re: Feb 22, 23: back in December, I had a Hearing scheduled for Feb 21, which got continued to March 20 because of a change in Judges. I have made an application to continue that Hearing to April 4. The consequence is that I did not buy a ticket to be in NYC on Feb 21. It is too late to do so now.
Re: professional and personal matters: in the meantime, I have taken on more training and exams, for which I have paid already.
Re: Rewards: there are three dates:
- March 1, over the phone
- March 15, in person in Chicago
- March 28, in person in Chicago, depending on what happens on March 15. This is the one I am offering to you, as I am fairly confident of that date.

Re: documents and witnesses: what Rules are you referring to?

PL

**From:** pl@firstadmininc.com [mailto:pl@firstadmininc.com]
**Sent:** Thursday, February 15, 2018 7:42 PM
**To:** Leo Fox <leo@leofoxlaw.com>
**Subject:** RE: 15 John Corp case #16-12453 Leo Fox Fee Application

Mr. Fox,
As we have discussed already, I simply cannot make it in February, and especially while you are detaining my


Because of the importance of this hearing, I cannot take the risk of appearing by phone, especially with the sheer quantity of exhibits I will have to present, as well as the witnesses.
The only solution I see prior to your trip, is that the March 28 Hearing in Chicago might be continued, or cancelled, in which case I would extend my trip into NY.
Please send my money back.
Thank you

PL

# *EXHIBIT B*

Singer v. Lajaunie, 339 P.3d 277 (2014)

2014 WY 159

339 P.3d 277
Supreme Court of Wyoming.

Daren SINGER, individually and in his capacity as
a manager of Beartooth Mountain Springs, LLC;
Clark's Fork Canyon Springs, LLC; and Sunlight
Springs Distribution, LLC, Appellants
(Defendants),
v.
Philippe LAJAUNIE, individually and derivatively
as a member of Beartooth Mountain Springs, LLC
and American Summits, LLC, Appellees
(Plaintiffs).
Philippe Lajaunie, individually and derivatively as
a member of Beartooth Mountain Springs, LLC
and American Summits, LLC, Appellants
(Plaintiffs).
v.
Daren Singer, individually and in his capacity as a
manager of Beartooth Mountain Springs, LLC;
Clark's Fork Canyon Springs, LLC; and Sunlight
Springs Distribution, LLC, Appellees
(Defendants).

Nos. S–14–0004, S–14–0005.
|
Dec. 10, 2014.

**Synopsis**
**Background:** Co-owner of water bottler brought an
action, individually and in his capacity as a member of
water bottler, which was a limited-liability company
(LLC), against co-owner for breach of fiduciary duty.
Defendant co-owner asserted a counterclaim based on a
theory of promissory estoppel and later sought to amend
the counterclaim to allege a claim of fraud. The District
Court, Park County, Steven R. Cranfill, J., granted
summary judgment in favor of plaintiff co-owner on the
counterclaim, denied defendant co-owner's motion to
amend, and entered judgment on a jury verdict awarding
$14,604.63 in damages to water bottler and no damages to
plaintiff co-owner. Plaintiff co-owner and defendant
co-owner appealed under separate docket numbers.

**Holdings:** The Supreme Court, Burke, C.J., held that:

[1] plaintiff co-owner did not establish his prima facie
entitlement to judgment as a matter of law on the
promissory estoppel claim;

[2] evidence of certain alleged conduct of plaintiff
co-owner was irrelevant; and

[3] error in admission of the irrelevant evidence was not
harmless.

Reversed and remanded.

West Headnotes (26)

[1]     **Judgment**
        ⚖Banks, corporations and associations

        Plaintiff co-owner of limited-liability company
        (LLC) water bottler failed to establish that
        defendant co-owner did not detrimentally rely
        on plaintiff co-owner's e-mail message to a bank
        regarding guaranteed sales when defendant
        co-owner agreed to pledge his ranch as collateral
        for a loan, and thus plaintiff co-owner, moving
        for summary judgment on defendant co-owner's
        counterclaim on a theory of promissory
        estoppel, failed to establish his prima facie
        entitlement to judgment as a matter of law,
        where plaintiff co-owner did not produce any
        evidence establishing the date of the loan
        application, whether any loan agreement had
        been reached at the time of the message, or
        when defendant co-owner made the decision to
        pledge the ranch as collateral. Rules Civ.Proc.,
        Rule 56.

        Cases that cite this headnote

[2]     **Judgment**
        ⚖Absence of issue of fact

        A genuine issue of material fact exists for
        purposes of summary judgment when a disputed
        fact, if it were proven, would establish or refute
        an essential element of a cause of action or a
        defense that the parties have asserted. Rules
        Civ.Proc., Rule 56(c).

2 Cases that cite this headnote

[3]    **Appeal and Error**
⟜Cases Triable in Appellate Court

Because summary judgment involves a purely legal determination, the Supreme Court undertakes de novo review of a trial court's summary judgment decision. Rules Civ.Proc., Rule 56.

2 Cases that cite this headnote

[4]    **Appeal and Error**
⟜Judgment

When reviewing a trial court's summary judgment decision, the Supreme Court considers the record from a viewpoint most favorable to the party opposing summary judgment, giving to him all favorable inferences that can be drawn reasonably from the facts set forth in the affidavits, depositions, and other material properly appearing in the record. Rules Civ.Proc., Rule 56.

2 Cases that cite this headnote

[5]    **Estoppel**
⟜Future events; promissory estoppel

"Promissory estoppel" is an equitable remedy for detrimental reliance upon a promise that does not rise to the level of a formal contract.

Cases that cite this headnote

[6]    **Estoppel**
⟜Future events; promissory estoppel

Promissory estoppel is a doctrine incorporated in the law of contracts.

Cases that cite this headnote

[7]    **Estoppel**
⟜Future events; promissory estoppel

General theory of promissory estoppel is that if an unambiguous promise is made in circumstances calculated to induce reliance, and it does so, the promisee if hurt as a result can recover damages.

Cases that cite this headnote

[8]    **Estoppel**
⟜Future events; promissory estoppel

Elements of promissory estoppel are (1) the existence of a clear and definite promise that the promisor should reasonably expect to induce action by the promisee, (2) proof that the promisee acted to its detriment in reasonable reliance on the promise, and (3) a finding that injustice can be avoided only if the court enforces the promise.

1 Cases that cite this headnote

[9]    **Estoppel**
⟜Weight and sufficiency of evidence

Party asserting promissory estoppel has the burden of establishing each of its three elements under a burden of strict proof.

1 Cases that cite this headnote

[10]    **Estoppel**

Singer v. Lajaunie, 339 P.3d 277 (2014)

2014 WY 159

☞Questions for jury

First two elements of promissory estoppel, i.e., the existence of a clear and definite promise that the promisor should reasonably expect to induce action by the promisee and proof that the promisee acted to its detriment in reasonable reliance on the promise, are questions of fact for the factfinder; the third element, i.e., a finding that injustice can be avoided only if the court enforces the promise, is a question of law for the court.

1 Cases that cite this headnote

[11]    **Judgment**
☞Presumptions and burden of proof

On a summary judgment motion, the movant has the burden of establishing his prima facie case; only then does the burden shift to the opposing party to establish through specific facts that a material question of fact remains. Rules Civ.Proc., Rule 56.

Cases that cite this headnote

[12]    **Pleading**
☞Discretion of Court

A decision to allow amendment to pleadings is vested within the sound discretion of the trial court. Rules Civ.Proc., Rule 15.

Cases that cite this headnote

[13]    **Appeal and Error**
☞Amended and Supplemental Pleadings

A trial court's decision to allow amendment to pleadings will be reversed only for an abuse of discretion shown by clear evidence. Rules Civ.Proc., Rule 15.

Cases that cite this headnote

[14]    **Pleading**
☞Amendment of Plea or Answer

Standard for allowing a plaintiff to amend pleadings when justice so requires also applies when a counterclaimant seeks to amend a counterclaim. Rules Civ.Proc., Rule 15(a).

Cases that cite this headnote

[15]    **Fraud**
☞Elements of Actual Fraud

Elements of fraud are (1) the defendant made a false representation intended to induce action by the plaintiff, (2) the plaintiff reasonably believed the representation to be true, and (3) the plaintiff relied on the false representation and suffered damages.

1 Cases that cite this headnote

[16]    **Fraud**
☞Intent
**Fraud**
☞Knowledge of defendant
**Fraud**
☞Statements recklessly made; negligent misrepresentation

To prove intentional misrepresentation, a plaintiff must show that the misrepresentation was made intentionally, with knowledge of its falsity or that the maker of the misrepresentation was at least aware that he did not have a basis for making the statement. Restatement (Second) of Torts § 526.

1 Cases that cite this headnote

Singer v. Lajaunie, 339 P.3d 277 (2014)

2014 WY 159

[17]    **Fraud**
       Weight and Sufficiency

Fraud must be proven by clear and convincing evidence, as opposed to by a preponderance of the evidence for negligent misrepresentation claims.

Cases that cite this headnote

[18]    **Corporations and Business Organizations**
       Evidence

Evidence purportedly showing that plaintiff co-owner of limited-liability company (LLC) water bottler breached a promise to purchase a truckload of water per day, had a long-held scheme to take over the bottling business, and purchased water bottler's assets after foreclosure was irrelevant at a trial on a claim against defendant co-owner for breach of fiduciary duty; the alleged facts, even if true, did not justify or explain defendant co-owner's conduct or make it more or less likely that he was acting with the required loyalty and responsibility toward water bottler, had no tendency to increase or mitigate damages, and did not provide a defense to the asserted claims. Rules of Evid., Rule 401.

Cases that cite this headnote

[19]    **Trial**
       Admission of evidence in general

Generally, decisions regarding the admissibility of evidence are entrusted to the sound discretion of the trial court.

1 Cases that cite this headnote

[20]    **Appeal and Error**
       Rulings as to evidence and instructions

Supreme Court affords considerable deference to a trial court's decision on the admissibility of evidence, and as long as a legitimate basis exists for the trial court's ruling, it will not be reversed on appeal.

1 Cases that cite this headnote

[21]    **Appeal and Error**
       Abuse of discretion

Under the abuse-of-discretion standard of review, the Supreme Court primary consideration is the reasonableness of the trial court's decision.

Cases that cite this headnote

[22]    **Appeal and Error**
       Burden of showing grounds for review

Burden of establishing an abuse of discretion by the trial court rests with the appellant.

Cases that cite this headnote

[23]    **Appeal and Error**
       Evidence in General

If the Supreme Court determines that a trial court erred in admitting evidence, the Supreme Court must then determine whether or not the error affected the appellant's substantial rights, providing grounds for reversal, or whether the error was harmless.

1 Cases that cite this headnote

[24]    **Appeal and Error**

Singer v. Lajaunie, 339 P.3d 277 (2014)

2014 WY 159

⇐Evidence in General

An error in admitting evidence is harmful if there is a reasonable possibility that the verdict might have been more favorable to the appellant if the error had never occurred.

2 Cases that cite this headnote

[25]    **Appeal and Error**
⇐Evidence in General

To demonstrate harmful error in the admission of evidence, an appellant must prove prejudice under circumstances that manifest inherent unfairness and injustice, or conduct that offends the public sense of fair play.

2 Cases that cite this headnote

[26]    **Appeal and Error**
⇐Evidence irrelevant to issue

Error in admission of irrelevant evidence of certain alleged conduct of plaintiff co-owner of limited-liability company (LLC) water bottler, including his purported breach of a promise to purchase a truckload of water per day, was not harmless at a trial on a claim against defendant co-owner for breach of fiduciary duty; the irrelevant evidence was emphasized by defendant co-owner, the only question before the jury was the amount of damages resulting from certain conduct of defendant co-owner, and the jury awarded less than the amount of damages indicated by evidence presented by plaintiff co-owner.

Cases that cite this headnote

**Attorneys and Law Firms**

*280 Representing Daren Singer, Clark's Fork Canyon

Springs, LLC, and Sunlight Springs Distribution, LLC: Weston W. Reeves and Anna M. Reeves Olson, Park Street Law Offices, Casper, Wyoming. Argument by Ms. Reeves Olson.

Representing Philippe Lajaunie and American Summits, LLC: Larry B. Jones and Colin M. Simpson, Burg, Simpson, Eldredge, Hersh & Jardine, PC, Cody, Wyoming; Brian K. Matise, Burg, Simpson, Eldredge, Hersh & Jardine, PC, Englewood, Colorado. Argument by Mr. Matise.

Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.

**Opinion**

BURKE, Chief Justice.

[¶ 1] This dispute arose from an unsuccessful business venture involving the bottling and sale of "premium bottled mineral water" by Beartooth Mountain Springs, LLC. Philippe Lajaunie and Daren Singer were owners and co-managers of Beartooth. Mr. Singer ran the day to day aspects of the business. In 2011, Mr. Lajaunie[1] filed suit against Mr. Singer[2] claiming that Mr. Singer had breached his fiduciary duties as a manager and member of Beartooth. Mr. Singer responded with a counterclaim based on a theory of promissory estoppel. He subsequently sought to amend the counterclaim to allege a cause of action based on fraud.

[¶ 2] The district court granted summary judgment in favor of Mr. Lajaunie on Mr. Singer's counterclaim, and denied Mr. Singer's motion to amend his counterclaim to add a claim of fraud. In Docket No. S–14–0004, Mr. Singer challenges the district court's decisions on these motions. In the trial on Mr. Lajaunie's claims, the jury awarded $14,604.63 in damages. In Docket No. S–14–0005, Mr. Lajaunie seeks a new trial contending that the district court admitted irrelevant evidence which improperly influenced the jury and negatively impacted the jury verdict. We reverse and remand for further proceedings in both dockets.

***ISSUES***

[¶ 3] In Docket No. S–14–0004, Mr. Singer presents these issues:

1. Did the district court err by granting summary judgment to Mr. Lajaunie on Mr. Singer's promissory

estoppel counterclaim?

2. Did the district court err in finding that Mr. Singer's proposed amended counterclaim would not withstand a motion to dismiss?

3. Did the district court abuse its discretion when it denied Mr. Singer's request to delay consideration of Mr. Lajaunie's motion for summary judgment until after discovery was completed?

*281 [¶ 4] In Docket No. S–14–0005, Mr. Lajaunie presents issues that we summarize as follows:

> 1. Did the district court abuse its discretion by admitting irrelevant evidence that prejudiced Mr. Lajaunie?

### FACTS

[¶ 5] In the 1980s and 1990s, Mr. Singer spent considerable time and effort analyzing the water from springs located on his family's ranch near Clark, Wyoming, and learning how to operate a premium bottled water business. In 2005, he and his brother, Steve Singer, acquired ownership of the ranch and placed it in a limited liability company, Clark's Fork Canyon Springs, LLC. They also formed Yellowstone Headwaters, LLC, a company that hand-bottled spring water for sale.

[¶ 6] In 2006, Mr. Lajaunie, a restaurateur from New York, ordered some Yellowstone Headwaters spring water. He had been interested for some time in establishing his own brand of premium-quality bottled spring water, and found the Yellowstone Headwaters product promising. He contacted Mr. Singer, and the two agreed to form a new business venture. The parties formed Beartooth Mountain Springs, LLC, in 2007. Mr. Lajaunie owned 40% of the company, Mr. Singer 30%, Yellowstone Headwaters 20%, and Mr. Singer's brother 10%. In exchange for their ownership interests, Mr. Lajaunie contributed $300,000, and Mr. Singer and his brother contributed "knowledge, know how, contacts, relationships and business acumen." Yellowstone Headwaters contributed access to the spring water.

[¶ 7] Mr. Lajaunie and Mr. Singer served as co-managers for Beartooth, but Mr. Singer was responsible for running its day-to-day operations, and had control of Beartooth's bank accounts and financial records. The Beartooth office was located in Mr. Singer's home, and Mr. Singer used some of his personal vehicles when conducting Beartooth business. Mr. Lajaunie took a more passive role. Shortly after Beartooth was formed, it entered into a distribution agreement with American Summits, LLC. American was to purchase bottled water from Beartooth for retail distribution.

[¶ 8] In 2008, Beartooth purchased Edelweiss, Inc., a company that owned and operated a bar, convenience store, and gas station located near the Beartooth bottling plant in Clark, Wyoming. Beartooth purchased Edelweiss to promote the spring water and as a staging area for future shipments by truck. There was a lease agreement between Beartooth and Edelweiss, but according to Mr. Singer, Edelweiss could never afford to pay Beartooth because it never made a profit.

[¶ 9] In May of 2009, Beartooth was in need of additional funds, and its members agreed to contribute more capital. Mr. Lajaunie agreed to contribute $74,376, but when it came time to make the payment, Mr. Lajaunie gave himself credit for a $54,768 loan he had previously made to Beartooth. As a result, his cash contribution was in the amount of $19,608.

[¶ 10] Also in 2009, Beartooth applied for a bank loan to allow it to expand its operations. The bank, in reviewing the loan, sought information on potential markets and sales. Mr. Lajaunie sent an email message stating, "in terms of volume, I guarantee one truck a day (14,400 bottles), 5 days a week.... I can sign a yearlong recurrent Purchase Order with no problem." The loan of $875,000 was finalized in August of 2009. The bank required Mr. Lajaunie to execute an unlimited personal guarantee of the loan, and his company, American Summits, placed a $46,000 certificate of deposit as collateral for the loan. In addition, Mr. Singer and his brother agreed to pledge the Singer Ranch as collateral.

[¶ 11] Although Mr. Singer had anticipated that Mr. Lajaunie, through American Summits, would begin purchasing Beartooth water soon after the distribution agreement was finalized in 2007, the first order was not made until January of 2010. When the water was delivered to New York, however, several bottles were frozen, and American Summits refused to pay for the shipment. In September of 2010, American Summits ordered another truckload of Beartooth water. When it arrived, American Summits again refused to *282 pay for the shipment. Mr. Lajaunie complained that the water had a musty smell, labels were off, water levels were inconsistent, and the carbonation was irregular.

[¶ 12] At some point, because Beartooth was not doing

well financially, Mr. Singer formed Sunlight Springs Distribution, LLC, and planned to sell Beartooth water through that company. Mr. Singer also planned for Sunlight Springs to loan Beartooth money to allow Beartooth to make loan payments to the bank. Mr. Singer did not inform Mr. Lajaunie about the creation of Sunlight Springs until several months after it went into business.

[¶ 13] As mentioned above, Mr. Singer ran Beartooth's day-to-day operations, and he had control of Beartooth's bank accounts and financial records. In June of 2010, Mr. Lajaunie came to Wyoming to review Beartooth's financial documents. Mr. Lajaunie became concerned that Mr. Singer had been using Beartooth funds to pay personal expenses. After discussing these concerns with Mr. Singer, Mr. Lajaunie claims that Mr. Singer cut off his access to Beartooth's financial records. Mr. Singer's version is that he took that step because Mr. Lajaunie had unilaterally charged Beartooth $4,500 "for his unwanted 'bookkeeping services.' "

[¶ 14] The bank eventually foreclosed on Beartooth's assets and collateral. Mr. Lajaunie purchased the Beartooth assets from the bank, along with the Singer Ranch. As of the date of trial, he was the owner of both.

[¶ 15] In his complaint, filed in March of 2011, Mr. Lajaunie claimed that Mr. Singer breached his fiduciary duties by using Beartooth company funds to pay for insurance on his personal vehicles, insurance and utilities for his home, and accounting services for Clark's Fork Canyon Springs. Mr. Lajaunie further contended that Mr. Singer had failed to collect rent from Edelweiss, and that his creation of Sunlight Springs led to lost income and business opportunities for Beartooth.

[¶ 16] As part of his counterclaim, Mr. Singer contended that Mr. Lajaunie's statement, "I guarantee one truck a day," was a promise that induced Mr. Singer to take out the bank loan and pledge the ranch as collateral. Mr. Singer asserted that Mr. Lajaunie had breached the promise by failing to buy the water, ultimately causing Beartooth to default on the bank loan and fail as a business. In September of 2012, Mr. Lajaunie moved for summary judgment on Mr. Singer's counterclaim, arguing that his "guarantee" was not a promise, but only his prediction of the potential market for Beartooth water. He also asserted that Mr. Singer could not have relied on his statement because it was made after the loan application had been submitted. Mr. Singer opposed summary judgment on his promissory estoppel claim, and also moved to amend his counterclaim to add a claim of fraud and to include his brother as a counterclaimant.

[¶ 17] The district court held a hearing on the motions in January of 2013. Less than a month later, Mr. Singer supplemented his opposition to summary judgment and motion to amend the counterclaim with evidence purporting to show that although Mr. Lajaunie had refused to pay for the two shipments of Beartooth water, he had actually sold that water in his restaurants. Mr. Singer asserted that this provided further support for his promissory estoppel and fraud counterclaims. In February of 2013, the district court issued a ruling granting summary judgment in favor of Mr. Lajaunie on Mr. Singer's promissory estoppel counterclaim, and denying Mr. Singer's motion to amend the counterclaim.

[¶ 18] A three-day jury trial was held in May of 2013 on Mr. Lajaunie's claims against Mr. Singer. The district court had previously ruled on summary judgment that Mr. Singer had breached his fiduciary duties by using Beartooth funds to pay for accounting services for Clark's Fork Canyon Springs, LLC. On this claim, the jury awarded damages of $1,604.63 to Beartooth, but no damages to Mr. Singer personally. The district court had also ruled that Mr. Singer had breached his fiduciary duties by interfering with Beartooth's business opportunities when he formed Sunlight Springs Distribution, LLC. On this claim, the jury awarded no damages. The jury found that Mr. Singer had breached his fiduciary duties by using Beartooth assets to benefit Edelweiss, Inc. It *283 awarded $13,000 in damages to Beartooth, but no damages to Mr. Lajaunie. The jury found that Mr. Singer had not breached his fiduciary duties by using Beartooth assets to pay for home utility expenses or personal automobile expenses, and it found that Clark's Fork Canyon Springs and Sunlight Springs Distribution had not been unjustly enriched by Mr. Singer's conduct. The district court entered judgment in accordance with the jury's verdict. Both parties filed timely appeals.

## DISCUSSION

### A. Docket No. S–14–0004

#### 1. Promissory Estoppel

[1] [2] [3] [4] [¶ 19] In his first issue, Mr. Singer challenges the district court's grant of summary judgment against him on his promissory estoppel claim. We review a district court's summary judgment decision using the following standard of review:

Summary judgment is appropriate when there are no

Singer v. Lajaunie, 339 P.3d 277 (2014)
2014 WY 159

genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Beverages, Inc.,* 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Id.* Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision. *Glenn v. Union Pacific R.R. Co.,* 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008).

*Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC,* 2008 WY 101, ¶ 8, 191 P.3d 125, 128–129 (Wyo.2008). We consider the record from a viewpoint most favorable to the party opposing summary judgment, giving to him all favorable inferences that can be drawn reasonably from the facts set forth in the affidavits, depositions, and other material properly appearing in the record. *Lever v. Community First Bancshares, Inc.,* 989 P.2d 634, 637 (Wyo.1999).

[5] [6] [7] [8] [9] [10] [¶ 20] Promissory estoppel is an equitable remedy for detrimental reliance upon a promise that does not rise to the level of a formal contract. *Michie v. Board of Trustees of Carbon County School Dist. No. 1,* 847 P.2d 1006, 1009 (Wyo.1993).

"Promissory estoppel is a doctrine incorporated in the law of contracts." *B & W Glass, Inc. v. Weather Shield Mfg., Inc.,* 829 P.2d 809, 813 (Wyo.1992). Its general theory is that, " '[i]f an unambiguous promise is made in circumstances calculated to induce reliance, and it does so, the promisee if hurt as a result can recover damages.' " *Id. (quoting Goldstick v. ICM Realty,* 788 F.2d 456, 462 (7th Cir.1986)).... The elements of promissory estoppel are:

> "(1) the existence of a clear and definite promise which the promisor should reasonably expect to induce action by the promisee; (2) proof that the promisee acted to its detriment in reasonable reliance on the promise; and (3) a finding that injustice can be avoided only if the court enforces the promise."

*City of Powell v. Busboom,* 2002 WY 58, ¶ 8, 44 P.3d 63, 66 (Wyo.2002) (*quoting Roussalis [v. Wyoming Med. Ctr., Inc.,* 4 P.3d 209,] 253 [ (Wyo.2000) ] ). The party asserting promissory estoppel has the burden of establishing each element under a burden of strict proof. *Busboom,* 2002 WY 58, ¶ 8, 44 P.3d at 66. The first two elements are questions of fact for the fact-finder; the third element is a question of law for the court. *Id.; Loya v. Wyoming Partners of Jackson Hole, Inc.,* 2001 WY 124, ¶ 22, 35 P.3d 1246, 1254 (Wyo.2001).

*Birt v. Wells Fargo Home Mortg., Inc.,* 2003 WY 102, ¶ 26, 75 P.3d 640, 651 (Wyo.2003).

[¶ 21] Mr. Singer contends that Mr. Lajaunie made a clear and definite promise when he informed the bank, in connection with the loan, that "in terms of volume, I guarantee one truck a day (14,400 bottles), 5 days a week.... I can sign a yearlong recurrent Purchase Order with no problem." Mr. Lajaunie insists that the statement was not a promise, but "only a prediction of what the market fortunes might bring when the facility was operating and able to sell product to the nationwide market."

*284 [¶ 22] The district court ruled that, whether or not this statement and others constituted clear and definite promises, Mr. Singer could not have relied upon them:

> The evidence on this issue is scarce. An email from Mr. Lajaunie to Mr. Singer ... dated January 8, 2009 states, "I guarantee one truck a day (14,400 bottles), 5 days a week, with no distributor involved." However, an email dated February 24, 2009 from Mr. Lajaunie to Mr. Singer and [the bank] states [,] "it is immensely helpful to know that the loan was approved in principle, with an amount ($850K) that will enable us to produce and ship a profitable flow of water." ...
>
> From the dates of these emails, the Court will have to agree with [Mr. Lajaunie] that the guarantee of one truckload of water per day was made while the application for the loan was already pending. [Mr. Singer] does not refute or clarify timing in his brief, and consequently has not met his burden of proof. Mr. Singer cannot claim he relied on this guarantee after he already agreed to the [bank] loan.

We would agree with the district court that the evidence on this issue is "scarce." There is no question that a loan application was submitted by Beartooth, but the specific date of that application has not been identified by the parties. Our review of the record has failed to disclose the date of the application. While it appears that the email messages were sent after the loan application process had begun, we are unable to ascertain the status of the loan at the time the email messages were sent. It is undisputed that Mr. Singer agreed to pledge the ranch as collateral, but from this record, we are unable to determine when

that decision was made.

[11] [¶ 23] Mr. Singer ultimately must prove reliance if he is to succeed in his promissory estoppel claim. However, it was Mr. Lajaunie who moved for summary judgment, and at that point, he had the burden to prove that there were no genuine issues of material fact regarding Mr. Singer's reliance. *Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.,* 907 P.2d 1293, 1297 (Wyo.1995). As we have explained before, on a summary judgment motion, the movant has the burden of establishing his *prima facie* case. Only then does the burden shift to the opposing party to establish through "specific facts" that a material question of fact remains. *Sierra Club v. Wyo. Dep't of Environmental Quality,* 2011 WY 42, ¶ 25, 251 P.3d 310, 317 (Wyo.2011).

[¶ 24] Mr. Lajaunie did not carry that burden. Mr. Singer contended that he relied on Mr. Lajaunie's January 8, 2009 email message when he agreed to pledge the Singer Ranch as collateral for the Beartooth loan. In order to establish that there was no genuine issue regarding detrimental reliance, it was incumbent upon Mr. Lajaunie to establish the date of the loan application, and when Mr. Singer agreed to pledge his ranch as collateral. The email messages relied upon by the district court are conclusive only if the terms of the loan had been agreed to prior to the emails. Mr. Lajaunie did not produce any evidence establishing the date of the loan application, whether any loan agreement had been reached at the time of the emails, or when Mr. Singer made the decision to pledge the ranch as collateral. It may be that Mr. Lajaunie can supply the missing dates and establish that he is entitled to summary judgment in this case. On the record before us now, however, we must conclude that the district court erred in granting summary judgment on the promissory estoppel claim.

### 2. Motion to Amend Counterclaim

[12] [13] [14] [¶ 25] As his second issue, Mr. Singer contends that the district court erred when it denied his motion to amend the counterclaim to add a claim of fraud and to add Mr. Singer's brother as a counterclaimant.

> The law in Wyoming is well settled that the decision to allow amendment to pleadings is vested within the sound discretion of the district court. That decision will be reversed only for an abuse of discretion shown by clear evidence.

*Ekberg v. Sharp,* 2003 WY 123, ¶ 9, 76 P.3d 1250, 1253 (Wyo.2003). Leave to amend pleadings "shall be freely given when justice so requires." W.R.C.P. 15(a).

We *285 have identified the "proper test as to what the trial court should consider when an amendment is proffered" to be the following:

> " * * * If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' * * * "

*Beaudoin v. Taylor,* 492 P.2d 966, 970 (Wyo.1972) (*quoting Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

*Armstrong v. Hrabal,* 2004 WY 39, ¶ 11, 87 P.3d 1226, 1230–1231 (Wyo.2004). The same standard applies when a counterclaimant seeks to amend a counterclaim. *See Hawkeye–Security Ins. Co. v. Apodaca,* 524 P.2d 874, 879 (Wyo.1974) (A counterclaim, "because it asks for affirmative relief, casts plaintiff-type burdens upon the counterclaimant.").

[15] [16] [17] [¶ 26] The elements of fraud are:

> (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages.

*Birt,* ¶ 42, 75 P.3d at 656. In order to prove intentional misrepresentation, the plaintiff must show that the misrepresentation was made intentionally, with knowledge of its falsity, or that the maker of the misrepresentation was at least aware that he did not have a basis for making the statement. *Id.; Restatement (Second) of Torts* § 526 (1977). Fraud must be proven by clear and convincing evidence, as opposed to by a preponderance of the evidence for negligent misrepresentation claims. *Birt,* ¶ 42, 75 P.3d at 656. Fraud must be pled with particularity. W.R.C.P. 9(b).

*Excel Construction, Inc. v. HKM Engineering, Inc.,* 2010 WY 34, ¶ 33, 228 P.3d 40, 48–49 (Wyo.2010).

[¶ 27] The proposed fraud counterclaim rested on essentially the same statements that were at issue in the promissory estoppel counterclaim, including Mr. Lajaunie's "guarantee" of purchasing a truckload of water per day. Mr. Singer also alleged that Mr. Lajaunie planned to take over Beartooth from the very beginning of their relationship, and took actions intended to force Beartooth to default on its bank loan, ultimately leading to Mr. Lajaunie's purchase of the Beartooth assets and the Singer Ranch.

[¶ 28] The district court's decision to deny the motion to amend the counterclaim was, in large measure, tied to its grant of summary judgment on the promissory estoppel claim. That decision was based on the district court's conclusion that Mr. Singer could not establish detrimental reliance on Mr. Lajaunie's statements. The district court concluded that the fraud claim would fail for the same reason, and, in part, denied the motion to amend on the basis of futility. As previously discussed, however, the district court erred in concluding that there was no genuine issue of material fact with regard to Mr. Singer's reliance on the statements. Accordingly, the district court's decision denying the motion to amend the counterclaim must also be reversed.

[¶ 29] We also note that Mr. Singer sought to add his brother as a counterclaimant because, like Mr. Singer, the brother held a 50% ownership interest in the Singer Ranch and allegedly agreed to pledge his 50% interest as collateral for Beartooth's bank loan in reliance upon the statements by Mr. Lajaunie. This issue became moot when the district court granted summary judgment on the promissory estoppel claim and denied the motion to amend the complaint. In light of our decision, this issue is no longer moot and must be addressed by the district court on remand.

### *286 3. Premature Summary Judgment

[¶ 30] Mr. Singer's final claim is that the district court erred by granting summary judgment before the completion of discovery. Because we have determined that the summary judgment order must be reversed on other grounds, we do not consider this third issue. We assume that on remand the district court will permit such discovery as is reasonably necessary to address the fraud and promissory estoppel claims.

### B. Docket No. S–14–0005

#### 1. Inadmissible Evidence

[18] [19] [20] [21] [22] [23] [24] [25] [¶ 31] Mr. Lajaunie contends that the district court allowed Mr. Singer to introduce irrelevant and prejudicial evidence at trial.

Generally, decisions regarding the admissibility of evidence are entrusted to the sound discretion of the district court. We afford considerable deference to the district court's decision and, as long as a legitimate basis exists for the district court's ruling, it will not be reversed on appeal. Under the abuse of discretion standard, our primary consideration is the reasonableness of the district court's decision. The burden of establishing an abuse of discretion rests with the appellant.

If we find that the district court erred in admitting the evidence, we must then determine whether or not the error affected [the appellant's] substantial rights, providing grounds for reversal, or whether the error was harmless. The error is harmful if there is a reasonable possibility that the verdict might have been more favorable to [the appellant] if the error had never occurred. To demonstrate harmful error, [the appellant] must prove prejudice under circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.

*Proffit v. State,* 2008 WY 103, ¶ 12, 191 P.3d 974, 977–978 (Wyo.2008) (internal citations and quotation marks omitted).

[¶ 32] Before trial, the district court granted summary judgment in favor of Mr. Lajaunie on his claims that Mr. Singer had breached his fiduciary duties by his use of Beartooth funds to pay accounting expenses of Clark's Fork Canyon Springs, LLC, and by creating Sunlight Springs Distribution, LLC, without notice to Mr. Lajaunie. The district court did not decide damages for these breaches, and did not decide whether Mr. Singer had breached fiduciary duties by other actions. Consequently, as Mr. Lajaunie explains in his brief, the issues remaining at trial were these:

1. [T]he amount of damages, if any, resulting from [Mr.] Singer's breach of his fiduciary duty by using [Beartooth] funds to pay accounting expenses of his business, [Clark's Fork Canyon Springs, LLC];

2. [T]he amount of damages, if any, resulting from [Mr.] Singer's breach of his fiduciary duties by taking advantage of business opportunities by creating [Sunlight Springs Distribution, LLC,] without

Singer v. Lajaunie, 339 P.3d 277 (2014)

2014 WY 159

disclosure to [Mr.] Lajaunie, and using the [Beartooth] trademark, "Sunlight Springs," for his new business;

3. Whether [Mr.] Singer breached his fiduciary duties by using [Beartooth] funds to pay for his utilities, auto expenses, insurance expenses, and similar personal expenses and if so, the amount of damages;

4. Whether [Mr.] Singer breached his fiduciary duty by using [Beartooth] property rent-free to operate a gas station, bar, and convenience store that he owned know[n] as "Edelweiss," and if so, the amount of damages;

5. Whether [Mr.] Singer breached his fiduciary duty by using [Beartooth] funds to pay for a trip to Mexico over Thanksgiving, 2009, and if so, the amount of damages; and

6. Whether [Clark's Fork Canyon Springs, LLC] or [Sunlight Springs Distribution, LLC], or both, were unjustly enriched as a result of Mr. Singer's breach of fiduciary duty, and if so, the amount of restitution that each should pay to [Beartooth].

Notably, at trial, Mr. Lajaunie expressly disclaimed any attempt to prove that Beartooth had failed as a result of Mr. Singer's breaches of fiduciary duty, and did not seek damages for the value of Mr. Lajaunie's lost **287** investments, lost future profits, or other consequential damages. Instead, Mr. Lajaunie sought damages only for the specific breaches he alleged, and in the discrete amounts caused by such breaches.

[¶ 33] Because the issues were so limited, Mr. Lajaunie filed a motion in limine seeking to exclude evidence relating to Mr. Singer's dismissed counterclaim. In particular, he moved to exclude evidence that he purchased the assets of Beartooth and the Singer Ranch from the bank after the bank had foreclosed on those assets. He sought to exclude evidence of his alleged "guarantee" to purchase Beartooth water, and evidence suggesting that he had long held a scheme to take over the Beartooth business to the exclusion of Mr. Singer. The district court indicated that it would limit Mr. Singer's ability to elicit testimony about these topics, although it suggested that it might allow an instruction informing the jury that Mr. Lajaunie eventually purchased the assets. Mr. Lajaunie contends, however, that the district court failed to exclude such evidence during trial despite Mr. Lajaunie's objections.

[¶ 34] Our first step in evaluating Mr. Lajaunie's claim is to consider whether the evidence was relevant and properly admitted, or was irrelevant and should have been excluded. W.R.E. 402 provides that evidence "which is not relevant is not admissible." W.R.E. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[¶ 35] As mentioned above, the issues at trial related to Mr. Singer's alleged breach of his fiduciary duties as a member of Beartooth. Evidence of Mr. Singer's actions was obviously relevant, because it tended to make it more or less probable that those actions breached his duties of loyalty and responsibility to Beartooth. However, we agree with Mr. Lajaunie that evidence of his conduct was not relevant.

[¶ 36] In his counterclaim and proposed amended counterclaim, Mr. Singer asserted that Mr. Lajaunie breached a promise to purchase a truckload of Beartooth water per day, had a long-held scheme to take over the Beartooth business, and purchased the Beartooth assets after foreclosure. Even if true, however, those facts have no relevance to the question of whether Mr. Singer breached his fiduciary duties. They do not justify or explain Mr. Singer's conduct, or make it more or less likely that Mr. Singer was acting with the required loyalty and responsibility toward Beartooth. They have no tendency to increase or mitigate damages. They do not provide a defense to the claims that have been asserted. In sum, such evidence is not relevant.

[¶ 37] Mr. Singer does not make a serious claim that the evidence is relevant for any particular issue. He contends that it is properly received as "background" and was properly admitted because Mr. Lajaunie "opened the door" to such evidence. Mr. Singer points out that, when one litigant offers evidence on an issue that is otherwise irrelevant or inadmissible, he cannot complain on appeal "if the opposing party introduces evidence on the same subject." *Francis v. Clark Equip. Co.,* 993 F.2d 545, 550 (6th Cir.1993). We have recognized that a litigant "may open the door to otherwise inadmissible testimony when he inquires about a particular subject." *Roden v. State,* 2010 WY 11, ¶ 14, 225 P.3d 497, 501 (Wyo.2010). Mr. Singer maintains that Mr. Lajaunie opened the door to evidence of his "guarantee" to purchase a truckload of Beartooth water per day rendering such evidence relevant and admissible.

[¶ 38] At trial, counsel for Mr. Singer referred to Mr. Lajaunie's email about the guarantee, and asked Mr. Lajaunie, "Isn't it true that you told [Mr. Singer] in terms of volume you guaranteed a truck a day?" Counsel for Mr. Lajaunie objected, and the district court excused the

jury from the courtroom to allow argument on the objection. The district court observed that "when we get into whether or not there was a particular guarantee, then I think I need to know, before the jury can hear that, exactly how that relates to the breach of fiduciary duties."

[¶ 39] Counsel for Mr. Singer responded as follows:

**\*288** We have heard from [Mr. Lajaunie] that he's been abused, that he's been cheated, that he didn't know what was going on, he was apparently naïve or distant; that this program was hijacked from him, that he was cut off from access to the company books. Because of his complaint about [Mr. Singer's] expenses and I think critical to the reasons for ... voting him out, the motivation for that, these clients' thinking and response to his conduct relates directly to this guarantee....

What happened yesterday, I think, was really amazing. We heard testimony that implies [Mr. Lajaunie] lost I don't know how many hundreds of thousands of dollars. It's just part of the general background.

You can't, as a plaintiff, make po[t] shots like that and say the business was hijacked.... You can't do things like that and then close the door.

Counsel for Mr. Lajaunie responded that the email "guarantee" was relevant only to the dismissed counterclaim, and was irrelevant to the breach of fiduciary duty claims. He continued:

Now, with regard to [counsel's] argument that we opened the door by presenting background information ... about Mr. Lajaunie's investment in the business, the sole purpose for that was to, number one, provide the jury with background that he was in fact a voting member, was in fact [a] manager, and is able to assert these claims in a derivative capacity on behalf of Beartooth Mountain Springs here.

That doesn't open the door to whether or not, in 2009, he guaranteed a truckload a day. [That c]an't excuse the breach of fiduciary duty. It's irrelevant to the claims remaining and it's highly prejudicial, I think, and it's confusing to the jury.

The district court then ruled:

You may not have opened the door, but you cracked a window and you were looking out. I think, just in order to be fair and to allow [counsel for Mr. Singer] to examine the areas that you brought up, he

can go in some of these areas.... I'm going to allow you to proceed when we come back with that question.

After the jury returned, the email "guarantee" was admitted into evidence.

[¶ 40] We have reviewed the record, and question the characterization of this testimony by Mr. Singer's counsel. More significantly, we are at a loss to understand how any "background" testimony opened the door for admission of the challenged evidence. Mr. Lajaunie was entitled to present evidence of the damages caused by Mr. Singer's breaches of fiduciary duty. By providing such evidence, whether it is viewed as "background" or otherwise, he did not open the door to the admission of otherwise irrelevant evidence concerning Mr. Lajaunie's "guarantee." That evidence does not have any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable. Under the circumstances, it was not reasonable to admit irrelevant evidence that might distract the jury from focusing on Mr. Singer's actions and allow Mr. Singer to try to shift blame onto Mr. Lajaunie. The district court abused its discretion in admitting such evidence.[3]

[26] [¶ 41] Having determined that the evidence was wrongly admitted, we must determine whether the error was harmful. The error is harmful if there is a reasonable possibility that the verdict might have been more favorable to Mr. Lajaunie if the error had not occurred. *Proffit*, ¶ 12, 191 P.3d at 977. Demonstrating harm can be a difficult task, but Mr. Lajaunie has done so in this case. He points out that counsel for Mr. Singer, in closing argument, reminded the jury of the erroneously-admitted evidence of Mr. Lajaunie's "guarantee." He told the jury that Mr. Lajaunie "breached the deal" by "not buying water, not buying water, not buying water." He characterized Mr. Lajaunie's actions as "deceit" and "chiseling."

[¶ 42] This emphasis on the irrelevant evidence seems reasonably likely to have influenced the jury. The district court ruled as a matter of law that Mr. Singer had breached **\*289** his fiduciary duties by using Beartooth assets to pay for accounting services for Clark's Fork Canyon Springs, LLC, and by creating Sunlight Springs Distribution, LLC, to take advantage of Beartooth's business opportunities. The only question before the jury on these claims was the amount of damages. On the first claim, Mr. Lajaunie provided evidence of approximately $3,200 in damages. The jury awarded only $1,604.63. On the second claim, evidence presented by Mr. Lajaunie

would have supported damages ranging from $34,000 to $61,000. The jury awarded no damages on this claim. The jury found that Mr. Singer had breached his fiduciary duties on the claim that Edelweiss had not paid rent to Beartooth. The evidence presented by Mr. Lajaunie was that the rent should have been $2,800 per month, and went unpaid for 36 months. Using straightforward multiplication, the jury could have found damages of $100,800. It awarded $13,000.

[¶ 43] Mr. Lajaunie's evidence on damages was not undisputed. We cannot be certain why the jury chose lesser damages on these three claims. We can say, however, that it is reasonably likely that the irrelevant evidence, admitted by the district court and emphasized by Mr. Singer's counsel in closing, contributed to that result.

### CONCLUSION

[¶ 44] In Docket No. S–14–0004, we reverse the district court's grant of summary judgment in favor of Mr. Lajaunie on Mr. Singer's promissory estoppel claim, and its denial of Mr. Singer's motion to amend his counterclaim. In Docket No. S–14–0005, we reverse the judgment entered by the district court. The case is remanded to the district court for further proceedings consistent with this opinion.

### All Citations

339 P.3d 277, 2014 WY 159

Footnotes

1    Mr. Lajaunie sued both in his personal capacity and in his capacity as a member of Beartooth. Our references to Mr. Lajaunie in this opinion include both capacities unless otherwise noted. The other plaintiff, American Summits, LLC, is a limited liability company. Mr. Lajaunie is a member and chief executive officer of American Summits.

2    Also sued as defendants were Clark's Fork Canyon Springs, LLC, and Sunlight Springs Distribution, LLC. Mr. Singer is a member and the manager of both companies.

3    We note that this evidence may be relevant and admissible if there is a new trial that includes Mr. Singer's promissory estoppel and fraud claims.

End of Document                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# *EXHIBIT C*

# Park County District Court
## Docket Sheet

| Case # | CV-2011-026536 | Judge | Hon. William J Edelman |
|---|---|---|---|
| Case Title | Lajaunie Vs Singer | Case Type | Civil - Simple Civil - Unspecified |

| Filed Date | Docket Entry Type | Description | Submitted By |
|---|---|---|---|
| 03-24-2011 | Complaint - Complaint | COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, & RESTITUTION FOR BREACH OF FIDUCIARY DUTY & UNJUST ENRICHMENT PLAINTIFF P-1  LAJAUNIE PHILIPPE PLAINTIFF P-2  AMERICAN SUMMITS LLC DEFENDANT D-1  SINGER DAREN DEFENDANT D-4  PINNACLE BANK WYOMING DEFENDANT D-2  CLARKS FORK CANYON SPRINGS LLC DEFENDANT D-3  SUNLIGHT SPRINGS DISTRIBUTION LLC | |
| 03-24-2011 | Summons - Issued | FOUR (4) | |
| 03-24-2011 | Jury Demand - Twelve | 6 PERSON JURY DEMAND | |
| 03-25-2011 | Complaint - Complaint | AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES & RESTITUTION FOR BREACH OF FIDUCIARY DUTY & UNJUST ENRICHMENT | |
| 03-25-2011 | Summons - Issued | FOUR (4) | |
| 03-25-2011 | Motion - Request for Setting | _ | |
| 03-25-2011 | Notice - Setting | 3-28-11 @ 9:30 | |
| 03-25-2011 | Motion - Temporary | VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION | |
| 03-28-2011 | Response - Response | DAREN SINGER'S RESPONSE TO PLFS' VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION (FAX) | |
| 03-28-2011 | Order - Appointing | ORDER APPOINTING SPECIAL COURT COMMISSIONER FOR HEARING ON PLF'S MOTION FOR TEMPORARY RESTRAINING ORDER | |
| 03-29-2011 | Summons - Served | DAREN SINGER / 3-25-11 CLARKS FOR CANYON SPRINGS/ED WEBSTER / 3-25-11 SUNLIGHT SPRINGS/ED WEBSTER / 3-25-11 | |
| 03-29-2011 | Response - Response | DAREN SINGER'S RESPONSE TO PLFS' VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION (ORIG) | |
| 04-13-2011 | Summons - Served | DOUGLAS WEEDIN/PINNACLE BANK / 4-12-11 | |
| 04-14-2011 | Answer - Counter Claim | ANSWER OF CLARK'S FORK CANYON SPRINGS, SUNLIGHT SPRINGS & DAREN SINGER & COUNTERCLAIM | |
| 05-03-2011 | Motion - Admission Pro Hac Vice | BRIAN MATISE | |
| 05-03-2011 | Order - Admission Pro Hac Vice | BRIAN K MATISE FOR PLF | |
| 05-04-2011 | Answer - Answer | PLF'S/COUNTERCLAIM DFT'S PHILIPPE LAJANUNIE & AMERICAN SUMMITS, LLC'S ANSWER TO DFT DAREN SINGER'S COUNTERCLAIMS | |
| 05-27-2011 | Motion - Temporary | PLFS' SECOND VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION | |
| 05-27-2011 | Motion - Request for Setting | FOR HEARING ON PLFS' SECOND VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION | |
| 06-01-2011 | Notice - Setting | 6-16-11 @ 9:00 | |
| 06-08-2011 | Motion - Appear by Telephone/Video | MOTION TO PERMIT TELEPHONIC APPEARANCE | |

# Park County District Court
## Docket Sheet

| Case # | CV-2011-026536 | Judge | Hon. William J Edelman |
|---|---|---|---|
| Case Title | Lajaunie Vs Singer | Case Type | Civil - Simple Civil - Unspecified |

| Filed Date | Docket Entry Type | Description | Submitted By |
|---|---|---|---|
| | | and Attorney Fees (End Volume #8) | Behalf of Philippe Lajaunie |
| 08-11-2017 | Motion - Appear by Telephone/Video | Consent Motion to Permit the Counsel for Dfts to Appear Telephonically at the 8-21-17 Motion Hearing and 9-2-17 Conference (Begin Vooume #9) | Robin E Tolg On Behalf of Daren Singer |
| 08-11-2017 | Supplement - Supplement | Dfts/Counter-Plfs' Supplemental Brief in Opposition to Plfs/Counter-Dfts' Motion for Partial Summary Judgment | Robin E Tolg On Behalf of Daren Singer |
| 08-11-2017 | Memorandum - Opposition | Dfts/Counter-Plfs Supplemental Memorandum in Opposition to Plfs Motion for Partial Summary Judgment and for Relief Pursuant to Rule 17(a) to Join Clarks Fork Canyon Springs, LLC as Counter-Plf | Robin E Tolg On Behalf of Daren Singer |
| 08-16-2017 | Supplement - Supplement | DFts' Supplemental Statement Material Facts | Robin E Tolg On Behalf of Daren Singer |
| 08-17-2017 | Reply - Reply | Plfs' Reply Brief to Dft/Counter Plfs' Supplemental Response to Motion for Partial Summary Judgment | Colin M Simpson On Behalf of Philippe Lajaunie |
| 08-18-2017 | Response - Response | Plfs' Response to Dfts' Letter Request for Continuance of 8-21-17 Motions Hearing | Colin M Simpson On Behalf of Philippe Lajaunie |
| 08-18-2017 | Reply - Reply | Plfs' Reply Brief to Dfts' Supplemental Statement of Material Facts | Colin M Simpson On Behalf of Philippe Lajaunie |
| 08-21-2017 | Motion - Admission Pro Hac Vice | Motion for Admission Pro Hac Vice Admission of Timothy J McIlwain, Esquire | Robin E Tolg On Behalf of Daren Singer |
| 08-21-2017 | Statement - Statement | Verified Statement of Timothy J McIlwain, Esquire Pursuant to Rule 84.2 | Robin E Tolg On Behalf of Daren Singer |
| 08-21-2017 | Notice - Setting | Notice of Setting  305/189 8-21-17 @ 2:00 PT  9-6-17 @ 9:00 | |
| 08-21-2017 | Order - Appear by Telephone/Video | Order Granting Telephonic Appearance  305/190 | Robin E Tolg On Behalf of Daren Singer |
| 08-29-2017 | Memorandum - Pretrial Memorandum | Plfs' Pretrial Memorandum | Colin M Simpson On Behalf of Philippe Lajaunie |
| 09-05-2017 | Memorandum - Pretrial Memorandum | Dfts/Counter-Plfs' Pretrial Memorandum (copy) | Robin E Tolg On Behalf of Daren Singer |
| 09-05-2017 | Counterclaim - Counterclaim | Second Amended Counterclaim of Daren Singer & Steve Singer, Individually and as members of Beartooth Mountain Springs, LLC., Clark's Fork Canyon Springs (copy) | Robin E Tolg On Behalf of Daren Singer |
| 09-06-2017 | Order - Order | Omnibus Order on Plfs' Motion for Partial Summary Judgment and Dfts' Motion to Amend First Amended Counterclaim to Add Counter Dft Heart Views, LLC, and an Alter Ego Theory of Liability 305/459 | |
| 09-08-2017 | Order - Vacating | Order Vacating and Resetting the Telephonic Pretrial Conference  305/411 | |
| 09-12-2017 | Order - Denying | Order Denying Motion to Consolidate  305/465 | |
| 09-15-2017 | Answer - To Counterclaim | Plfs/Counterclaim Dfts Philippe Lajaunie, American Summits, LLC, and Heart Views, LLC's Answer and | Colin M Simpson On Behalf of Philippe |

# Park County District Court
## Docket Sheet

| **Case #** | CV-2011-026536 | **Judge** | Hon. William J Edelman |
|---|---|---|---|
| **Case Title** | Lajaunie Vs Singer | **Case Type** | Civil - Simple Civil - Unspecified |

| Filed Date | Docket Entry Type | Description | Submitted By |
|---|---|---|---|
| | | Affirmative Defenses to Second Amended Counterclaims | Lajaunie |
| 09-19-2017 | Request - Request | Request for Scheduling Conference | Larry B Jones On Behalf of Philippe Lajaunie |
| 09-26-2017 | Notice - Setting | Notice of Setting Scheduling Conference  306/112  9-25-17 @ 10:00 | |
| 09-28-2017 | Order - Scheduling Order | Scheduling Order  306/158  PT  2-20-18 @ 9:00  JT  3-26-18 @ 9:00 | |
| 11-08-2017 | Order - Denying | Order Denying Motion to Consolidate  307/120 | |
| 12-01-2017 | Motion - Motion | Plfs' Motion to Join Pinnacle Bank or to Dismiss Counterclaim for Failure to John Necessary and Indispensable Party | Colin M Simpson On Behalf of Philippe Lajaunie |
| 12-26-2017 | Brief - Brief | Dfts Brief in Oppostion to Plfs' Motion to Join Pinnacle Bank or Dismiss Dfts' Counterclaim and Dft's Claim for Attorneys Fes and Costs Against Plf | Robin E Tolg On Behalf of Clarks Fork Canyon Springs Llc |
| 01-05-2018 | Motion - Extension of Time | Unopposed Motion for Extend Deadline to Complete Discovery | Colin M Simpson On Behalf of Philippe Lajaunie |
| 01-08-2018 | Reply - Reply | Plfs' Reply in Support of Motion to Join Pinnacle Bank as a Necessary and Indispensable Party | Larry B Jones On Behalf of Philippe Lajaunie |
| 01-08-2018 | Motion - Request for Setting | Request for Setting | Larry B Jones On Behalf of Philippe Lajaunie |
| 01-26-2018 | Motion - Summary Judgment | Plfs' and Counter Dfts' Motion for Partial Summary Judgment Available Remedies | Colin M Simpson On Behalf of Philippe Lajaunie |
| 01-26-2018 | Memorandum - Support | Memorandum of Law in Support of Plfs' Motion for Partial Summary Judgment | Colin M Simpson On Behalf of Philippe Lajaunie |
| 01-29-2018 | Order - Setting Hearing | Order Setting Telephonic Motion Hearing  1-29-18 @ 9:30 | |
| 01-31-2018 | List - Expert | Plf's Expert Witness Disclosure | Colin M Simpson On Behalf of Philippe Lajaunie |

# Park County District Court
## Docket Sheet

| Case # | CV-2011-026536 | Judge | Hon. William J Edelman |
|---|---|---|---|
| Case Title | Lajaunie Vs Singer | Case Type | Civil - Simple Civil - Unspecified |

| Filed Date | Docket Entry Type | Description | Submitted By |
|---|---|---|---|
| 02-20-2018 | Statement - Statement | Counter-Plfs' Counter-Statement of Material Facts in Response to Counter-Dfts' 1-26-18 Motion for Partial Summary Judgment | Robin E Tolg On Behalf of Clarks Fork Canyon Springs Llc |
| 02-20-2018 | Memorandum - Opposition | Counter-Plfs' Memorandum ofLaw in Opposition to Counter-Dfts' 1-26-18 Motion for Partial Summary Judgment | Robin E Tolg On Behalf of Clarks Fork Canyon Springs Llc |
| 02-07-2018 | Motion - Compel | Heart Views, LLC's Motion to Compel Daren Singer to Respond to Discovery Requests | Colin M Simpson On Behalf of Philippe Lajaunie |
| 02-07-2018 | Order - Vacating and Resetting | Order Vacating and Resetting Jury Trial 3-26-18 @ 9:00 reset 7-9-18 @ 9:00 5 Days | |
| 02-05-2018 | Notice - Setting | Notice of Setting Telephone Pretrial Conference 309/194 4-25-18 @ 9:00 | |
| 02-05-2018 | Notice - Setting | Notice of Setting Motion Hearing 309/193 3-26-18 @ 9:00 | |
| 02-05-2018 | Order - Extending | Order Granting Unopposed Motion to Extend Deadline to Complete Discovery 309/192 | |
| 01-31-2018 | List - Expert | Plf's Expert Witness Disclosure | Colin M Simpson On Behalf of Philippe Lajaunie |
| 01-29-2018 | Order - Setting Hearing | Order Setting Telephonic Motion Hearing 309/87 1-29-18 @ 9:30 | |
| 01-26-2018 | Memorandum - Support | Memorandum of Law in Support of Plfs' Motion for Partial Summary Judgment | Colin M Simpson On Behalf of Philippe Lajaunie |
| 01-26-2018 | Motion - Summary Judgment | Plfs' and Counter Dfts' Motion for Partial Summary Judgment Available Remedies | Colin M Simpson On Behalf of Philippe Lajaunie |
| 01-08-2018 | Motion - Request for Setting | Request for Setting | Larry B Jones On Behalf of Philippe Lajaunie |
| 01-08-2018 | Reply - Reply | Plfs' Reply in Support of Motion to Join Pinnacle Bank as a Necessary and Indispensable Party | Larry B Jones On Behalf of Philippe Lajaunie |
| 01-05-2018 | Motion - Extension of Time | Unopposed Motion for Extend Deadline to Complete Discovery | Colin M Simpson On Behalf of Philippe Lajaunie |
| 12-26-2017 | Brief - Brief | Dfts Brief in Oppostion to Plfs' Motion to Join Pinnacle Bank or Dismiss Dfts' Counterclaim and Dft's Claim for Attorneys Fes and Costs Against Plf | Robin E Tolg On Behalf of Clarks Fork Canyon Springs Llc |
| 12-01-2017 | Motion - Motion | Plfs' Motion to Join Pinnacle Bank or to Dismiss Counterclaim for Failure to John Necessary and Indispensable Party | Colin M Simpson On Behalf of Philippe Lajaunie |
| 11-08-2017 | Order - Denying | Order Denying Motion to Consolidate 307/120 | |
| 09-28-2017 | Order - Scheduling Order | Scheduling Order 306/158 PT 2-20-18 @ 9:00 JT 3-26-18 @ 9:00 | |
| 09-26-2017 | Notice - Setting | Notice of Setting Scheduling Conference 306/112 9-25-17 @ 10:00 | |
| 09-19-2017 | Request - Request | Request for Scheduling Conference | Larry B Jones On Behalf of Philippe Lajaunie |