**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                                   :
                                                         :
                                                         :
                                                         :
    15 JOHN CORP.,                     :
    a/k/a LES HALLES,                   :
    a/k/a FIRST ADMIN INC.              :    Chapter 11
                                                         :    Case No. 16-12453 (MEW)
                                                         :
        Debtor(s)   :
---------------------------------------------------------------x

**MOTION IN LIMINE FOR RULING THAT PRIVILEGE IS WAIVED FOR ALL COMMUNICATIONS RELATING TO FEE APPLICANT'S SERVICES AND OBJECTIONS THERETO AND THAT FUNDS IN ESCROW BE AVAILABLE FOR LEGAL FEES**

The Fee Applicant hereby submits his Motion in Limine for this Court to render rulings on the issues raised by Philip LaJaunie concerning his right to attorney-client privilege with respect to communications and documents involving the Fee Applicant and relating to the services rendered by the Fee Applicant on behalf of the Debtor.

FACTS

LaJaunie's opposition includes claims that the billing was inflated, that the Fee Applicant's services were not rendered in a professional manner and the Fee Applicant engaged in "endless misrepresentations and repeated false calculations" and that LaJaunie was required to hire another law firm.  It is undisputed that such law firm rendered services in attempting to negotiate a class action settlement settling the claims of the Debtor as well as LaJaunie and thereafter contributing to the Plan and Disclosure Statement of the Debtor. LaJaunie now seeks to assert privilege to all documents involving such counsel and the Fee Applicant which prima

1

facie relates to services for the Debtor Corporation and attempts to seek privilege with respect to term sheets and communications disseminated to third parties. LaJaunie's objections to the Fee Applicant waives the privilege between the Debtor and the Fee Applicant as well as any attorney client privilege between LaJaunie and such law firm which involved services rendered because of the Debtor.

ATTORNEY CLIENT PRIVILEGE IS WAIVED WHEN A PARTY PLACES THE SUBJECT MATTER OF THE PRIVILEGED COMMUNICATIONS AT ISSUE

"The attorney-client privilege is waived when the defendant places in issue the subject matter of the privileged communication, so that the invasion of privilege is required to determine the validity of the party's claim or defense, and application of the privilege would deprive the opposing party of vital information. Thus, a defendant questioning the quality of the defendant's attorneys representation is a waiver of relevant communications to the attorney." 35A Carmody-Wait,2d, section 195-204.

Here, where LaJaunie is challenging the fees, professionalism and integrity of counsel, he has placed the subject matter of any privileged communication at issue.

In American Re-Insurance Company v. United Stated Fidelity & Guaranty Company, 40 A.D.3d 86, 837 NYS2d 616 (1st Dept 2007), the Court explained that "under the "at issue" doctrine, where a party places legal advice or other privileged facts or communication at issue, it is deemed to have waived the privilege with respect to such facts or communications and can be compelled to produce them. This doctrine applies where a party, through its affirmative acts, places privileged material at issue and has selectively disclosed the advice…[citations omitted].

2

It reflects the principle that privilege is a shield and must not be used as a sword. [citations omitted]." Here, the communications and documents involving the law firm related to the Fee Applicant's representation which LaJaunie claims was faulty and required such law firm to supplement are matters "at issue" and cannot be protected.

In First Federal Savings & Loan Association of Pittsburgh v. Oppenheim, 110 F.R.D. 557-560-561 (S.D.N.Y 1986), the Southern District of New York explained:

> "The principle has long been accepted that, in appropriate circumstances, an attorney may disregard the privilege of a current or former client and disclose otherwise protected attorney-client communications. The definition of the appropriate circumstances has, however, even a matter of some dispute.
>
> The most frequently invoked rule, which was principally a nineteenth-century American common law, permitted disclosure by the attorney if he was suing the client to collect a fee, e.g. Mitchell v. Bromberger, 2 Nev. 345, 349 (1986) cf. Nakasian v. Incontrade, Inc., 409 F.Supp 1220, 1224 (S.D.N.Y 1976); if he was being sued by the client for malpractice, e.g. Nave v. Baird, 12 Ind. 318, 319 (1859) or is his client challenged his competence or integrity even though the attorney was not a party to the lawsuit." E.g. State v. Madigan, 66 Minn. 10, 68 N.W. 179 (1896)."

Further, the First Federal Savings Court, applying the "standard of reasonable necessity" held that:

> "disclosure is authorized for those items that, as a practical matter, seem likely to provide significant assistance to Harkin's defense. In general terms, the standard permits Harkins to testify about all his conversations with Comark officers or employees concerning the commingling problems since it will be necessary for Harkins to explain what he knew about it, and what he did not do about it. Necessarily, the production of documents must be similar in scope." 110 F.R.D. at 567.

Further:

"As described by Wigmore:

[W]hen [the client's] conduct touches a certain point of disclosure, fairness requires that his privilege cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleased, to withhold the remainder…

> 8 Wigmore, supra, section 2327 at 636. In such a situation, at a minimum waiver will be found for so much of the withheld information "as will make the disclosure complete and not misleadingly one-sided"….[citation omitted] Id at 567.

The law firm was acting as both the attorney for the Debtor as well as for LaJaunie by contributing their efforts to resolve the Debtor's issues as well as Philip's issues and accordingly LaJaunie may not even assert any privilege existing between such law firm and the Debtor. In United States v Daugerdas, 757 F.Supp.2d 364 (S.D.N.Y. 2010), the Southern District explained that any privilege belongs to the corporation and not to the individual employee. The Court of Appeals recognizes a personal claim of privilege over conversations between a corporate employee and corporate counsel only where the employee demonstrates that he 'sought [] or received legal advice from [counsel] on personal matters." 757 F.Supp.2d at 370. The Court of Appeals "drew on other circuits' decisions that require the employee asserting privilege to make clear to corporate counsel that he seeks advise in his individual capacity." Id. Therefore, LaJaunie has no right to assert a privilege as to his own counsel where that counsel was acting on behalf of the Debtor as well as purportedly on behalf of LaJaunie. The privilege must fail based on rationale set forth above.

THE ESCROWED FUNDS SHOULD BE PAID TO THE FEE APPLICANT

Rather than hide these funds as claimed by Lajaunie, in a series of emails in September 2016 early in this case between LaJaunie and the Fee Applicant, LaJaunie attempted to negotiate a total cash amounts which it was believed would resolve the claims of the class action settlement and creditors which LaJaunie unilaterally reduced to $50,000 and then inquiring as to the deposit of the $50,000 into the Fee Applicant's escrow account (L4, L5, L6 and L7). Thereafter LaJaunie confirmed as late as February 2017 that there had been "deposited in

escrow…50,000 for professional fees." (F2 88)   References are made elsewhere to this "escrow."

The funds escrowed by LaJaunie should remain in escrow and be used to pay Fee Applicant's attorney's fees, the purpose for such funds to be deposited.  It is well settled that "for an escrow to be valid the delivery of the property must be irrevocable.…If the grantor reserves the right to revoke the agreement, there is no escrow [citation omitted]." O.P.M Leasing Services v. Hasset, 46 B.R. 661 (Bankr. S.D.N.Y. 1985) Accordingly, LaJaunie agreed to the irrevocable element of the "deposit", agreed to the purpose for the deposit (Attorney's administration fees) and cannot now decide to assert rights to the return of such funds based upon the changes in circumstances.

Dated: April 18, 2018

                                             /s/ *Leo Fox*
                                             Leo Fox, Esq.
                                             Fee Applicant
                                             630 Third Avenue, 18th Floor
                                             New York, New York 10017
                                             Tel:  (212) 867-9595
                                             Fax: (212) 949-1857